S90A0558. TELECOM*USA, INC. v. COLLINS et al.
S90X0559. BIBB COUNTY BOARD OF TAX ASSESSORS v. TELECOM*USA, INC.
S90A0560. COLONIAL PIPELINE COMPANY v. COLLINS et al.
S90X0561. BARTOW COUNTY BOARD OF TAX ASSESSORS v. COLONIAL PIPELINE COMPANY.
S90A0562. PLANTATION PIPE LINE COMPANY v. COLLINS et al.
S90X0563. BIBB COUNTY BOARD OF TAX ASSESSORS v. PLANTATION PIPE LINE COMPANY.
(393 SE2d 235)

CLARKE, Chief Justice.

TELECOM*USA, Inc. ("Telecom"), Colonial Pipeline Company ("Colonial"), and Plantation Pipe Line Company ("Plantation") are public utilities which own property in various Georgia counties. Each of the companies brought an action in Fulton County Superior Court to challenge the 1989 ad valorem tax assessments on their property. Because of uncertainty about the procedural requirements of the newly amended OCGA § 48-2-18, the utilities joined the county boards of tax assessors and county commissioners as parties in the Fulton County action and simultaneously filed separate appeals in the counties where the property is located. Colonial has 37 local appeals; Plantation has 30 local appeals; and Telecom has 13 local appeals.

In the Fulton County actions, each utility filed a motion seeking (1) to stay the local appeals pending the outcome of the Fulton County action; (2) to enjoin the counties from assessing their property at an amount higher than the "undisputed amount" during the pendency of the action; and (3) to enjoin the counties from assessing taxes at an amount greater than that finally established in the Fulton County appeal. In each of the Fulton County cases most of the county commissioners and county boards of tax assessors filed joint motions to dismiss the action against them for lack of jurisdiction. The court denied all motions. These three interlocutory appeals and three cross-appeals ensued. We affirm the denial of the utilities' motions and reverse the denial of the counties' motion to dismiss, except as to the utilities' claims for declaratory judgment.

1. The utilities' motions to stay the local appeals: Prior to 1989, if a utility objected to a tax assessment, it appealed to the State Board of Equalization ("Board"). The Board held a hearing, made findings

of fact and conclusions of law and ruled on the appeal. If the utility was dissatisfied with the result, it could appeal to the Superior Court in Fulton County. In 1988, the legislature amended OCGA § 48-2-18 to eliminate the hearing before the Board and to provide two new appeal procedures. Section (c) of the statute provides for a direct appeal to the Superior Court of Fulton County.[1] Section (d) provides for an administrative appeal in each county where the utility owns property.[2] The statute does not state explicitly whether the appeals are to proceed simultaneously, serially, or alternatively, and does not state which appeal shall be final. The utilities argue that the amended statute creates a litigator's nightmare, requiring appeals that are redundant, vexatious, oppressive and ruinously expensive. They assert that they are entitled to an injunction to avoid a multiplicity of lawsuits and the possibility of conflicting results.

To decide this issue, we must first interpret the amended statute. We begin our analysis with the "golden rule" of statutory construction, which requires us to follow the literal language of the statute "unless it produces contradiction, absurdity or such an inconvenience as to insure that the legislature meant something else." *Department*

---

[1] OCGA § 48-2-18 (c) provides in part as follows:

. . . After final approval by the State Board of Equalization of the digest of proposed assessments made by the commissioner and after any adjustments by the board as authorized by this Code section are made, the commissioner shall notify within 30 days each taxpayer in writing of the proposed assessment of its property. At the same time, the commissioner shall notify in writing the board of tax assessors of such county as outlined in Code Section 48-5-511, of the total proposed assessment of the property located within the county of taxpayers who are required to return their property to the commission. At the same time, the commissioner shall notify in writing the affected taxpayers of his proposed assessment. If any such taxpayer notifies the commissioner and the board of tax assessors in any such county of its intent to dispute a portion of the proposed assessment within 20 days after receipt of the notice, the county board of tax assessors shall include in the county digest only the undisputed amount of the assessment, and the taxpayer may challenge the commissioner's proposed assessment in an appeal filed in the Superior Court of Fulton County within 30 days of receipt of the notice. In any such appeal the taxpayer shall have the right of discovery as provided in Chapter 11 of Title 9, the "Georgia Civil Practice Act." Upon conclusion of the appeal, the taxpayer shall remit to the appropriate counties any additional taxes owed, with interest at the rate provided by law for judgments.

[2] OCGA § 48-2-18 (d) provides as follows:

Within 30 days after receipt of the proposed digest of assessments, the county board of tax assessors shall make the final assessment of the property in question and provide notice to the taxpayer. Such notice and any appeal therefrom shall be accomplished as provided by Code Sections 48-5-306 and 48-5-311. In the event of an appeal, the department shall, upon request of the local board of tax assessors and without any charge or cost therefor, provide the local board of tax assessors with any and all technical assistance available from the resources of the department, including without limitation expert testimony by the employees of the department.

*of Transp. v. City of Atlanta*, 255 Ga. 124, 137 (337 SE2d 327) (1985) (Clarke, J., concurring specially). When literal reading of the statute produces such an absurdity, the appellate court must then seek to make sense out of the statute, while being faithful to the legislative intent. Id. To define the legislative intent, the court considers the purpose of the statute and its impact on the body of law as a whole. Id. The court also considers the law as it existed before the statute was passed and identifies the mischief sought to be corrected. Id. Finally, when a taxing statute has doubtful meaning, it must be construed liberally in favor of the taxpayer and against the State. *Thompson v. Eastern Air Lines*, 200 Ga. 216, 224 (36 SE2d 225) (1946).

Certainly, it would create an absurdity to require utilities to litigate and re-litigate the same issues in each county in the State. Thus, although the statute establishes two separate appeals procedures, we must assume that the legislature did not intend for the two procedures to be simply redundant. Nor could the legislature have intended that one procedure be totally controlling over the other so that one would be meaningless. *Buice v. Dixon*, 223 Ga. 645 (157 SE2d 481) (1967). The only logical interpretation of the statute is one that gives the two appeals different purposes.

To ascertain what different purpose might be accomplished by each appeal, we look first to the plain language of the statute. Section (c) of the statute deals with the issuance by the Commissioner of a "proposed assessment" and an appeal from that "proposed assessment." Section (d) provides for the county board of tax assessors to issue a "final assessment" and provides for another appeal. The utilities argue that the "proposed assessment" and the "final assessment" are the same. Thus, they say, the appeals from each of these assessments would necessarily involve the same issues. We do not agree.

The stated purpose of the 1988 amendment to OCGA § 48-2-18 was

> to extensively revise provisions relating to ad valorem taxation of public utilities; *to provide for local assessment*; to provide for state assistance in the event of appeals; to *change the method of assessment* of public utilities; to revise the duties and responsibilities of the State Board of Equalization. . . .

(Emphasis supplied.) Ga. L. 1988, p. 1568. The changes in the statute can best be understood as they stand in contrast to the former version of the statute. The 1988 amendments to Title 48 left intact the old provisions relating to the "unit tax" method for public utilities. See OCGA § 48-5-511. The amendments did not relieve the Commissioner

and the Board of their responsibility to make an assessment of all the utility's taxable assets in the State as a unit and apportion it among the counties. Compare OCGA § 48-2-18 (b) and (c) as enacted by Ga. L. 1978, p. 309, § 2, and OCGA § 48-2-18 (b) and (c) as enacted by Ga. L. 1988, p. 1568, § 1. The real "change in the method of assessment" is found in OCGA § 48-2-18 (d), in which the counties are given thirty days after the receipt of the proposed digest to make a "final assessment" and provide notice to the taxpayer. We find no statutory mention of the county's right to make a "final assessment" before the 1988 amendments. We note also that the legislature described assessment issued by the Commissioner as a "proposed assessment" and the assessment by the county board of tax assessors as the "final assessment." Thus, the plain language of the statute, its caption, and its history, all indicate that the legislature intended for the counties to play a new role in the taxation of utilities. The essence of the counties' new role is the right to make an assessment that is different from the Commissioner's "proposed assessment" and to deal with appeals from its "final assessment."

The legislative history of the statute also supports this construction. The House Bill which became the existing statute was reported out of the House Ways and Means Committee by substitute without any provision for an appeal from the Board's "proposed assessment." H.B. 337, Ga. House Journal, 1988 Reg. Sess., p. 1330. It made provision, however, for appeals of the county boards in the counties in which the "final assessments" were made. Id. at 1332. The portion of the statute dealing with an appeal from the Board's action was inserted as a floor amendment. Id. at 1338. Without that amendment, all appeals would have been from the assessment of the county boards. Additional evidence of the intent of the legislature is contained in the fiscal note provided to the House Ways and Means Committee by the State auditor and the Office of Planning and Budget which describes the bill as one providing for the property of utilities to be "assessed by local taxing jurisdictions (cities, counties and school districts) instead of the Department of Revenue." Ga. Senate Journal, 1988 Reg. Sess., p. 2099. The fiscal note also recites, "the Department would still be involved in developing proposed assessments; however, the final assessment and collection of the tax would be the responsibility of the local tax jurisdiction. The Bill would also eliminate provisions requiring the State Board of Equalization to hear appeals involving certain tax assessment disputes."

Accordingly, we conclude that the county boards of tax assessors may either adopt or modify the Commissioner's "proposed assess-

ment" before issuing a "final assessment."[3] If the "final assessment" is different from the "proposed assessment," a utility seeking to appeal should invoke the appeal procedures provided in Section (d) of the statute. If the county has modified the "proposed assessment," then the county must have had access to information that is either more current or more credible regarding the appropriate assessment amount. The issues and evidence presented at that appeal would necessarily be different than those presented at the Section (c) appeal. When the county's "final assessment" is an independent assessment — one that is not based solely on the Commissioner's "proposed assessment" — the appeal should proceed in that county because the county, rather than the Commissioner or the Board, has aggrieved the utility.

On the other hand, counties may rely entirely on the Commissioner's "proposed assessment" in issuing the "final assessment." It would not make sense to require a taxpayer whose only dispute is with the Commissioner's "proposed assessment" to litigate in each county. Therefore, we hold that in those counties that adopt the Commissioner's "proposed assessment" without any change, the Section (c) appeal would be conclusive as to all issues. In so holding, we do not rely on traditional principles of res judicata, but rather on the "golden rule" of statutory interpretation. See *Dept. of Transp.*, supra.

In other words, we read Section (d) of the statute as follows:

> Within 30 days after receipt of the proposed digest of assessments, the county board of tax assessors shall make the final assessment of the property in question and provide notice to the taxpayer. Such notice and [*if the final assessment is in any way different from the Commissioner's proposed assessment*] any appeal therefrom shall be accomplished as is provided by Code Sections 48-5-306 and 48-5-311.

(Language in brackets supplied.) OCGA § 48-2-18 (d). Under this interpretation of the statute, the utilities are not subjected to a multiplicity of lawsuits. Although they may file several appeals, each will deal with distinct issues and evidence. Under this construction of the statute, utilities bear the same burden as any other taxpayer holding property in numerous counties.

The utilities next argue that the local appeals should not proceed

---

[3] Some of the documents submitted by the counties or by the Board imply that the counties may appropriately modify only the "assessment ratio" before issuing a final assessment. However, neither the method for establishing the "final assessment" nor any possible limitations on the counties' power to modify the Commissioner's "proposed assessment" are squarely raised in this case. We do not reach these issues here.

until after the Fulton County appeal has been concluded. They assert that they are entitled to a stay either because the statute should be construed to provide one, or because of the inequity of requiring them to proceed in thirty or more counties at once.

Under our construction of the statute above, it is unlikely that any utility will pursue appeals in every county in which it owns property. Further, chronological appeals would produce an extremely protracted litigation schedule. Such a schedule is not consonant with the intent of the statute. The statute provides very specific, short time limits for filing appeals. While these deadlines may be difficult to meet, the legislature could have and did not provide for a stay of either appeal pending the outcome of the other. The legislature evidently intended for the appeals processes to be undertaken simultaneously. Under the facts of this case, we cannot say that the trial court abused its discretion in denying the utilities' motion for an interlocutory injunction. See generally OCGA § 9-5-8.

2. The utilities' motions to enjoin the counties from collecting any more than the undisputed amount of the tax: In the action below, the utilities sought to enjoin the counties from collecting more than the undisputed amount of the tax during the pendency of the Fulton County appeal. We conclude that no injunction is necessary.

Section (c) of the statute states plainly that during the pendency of the Section (c) appeal, the county board of tax assessors may include in the county digest only the undisputed amount of the assessment. This provision is clear and self-executing. It is not necessary to enjoin the counties to carry out the clear legislative mandate, especially because the record does not reflect any attempt by the counties to levy on any amount greater than the undisputed amount.

The only possibility for confusion arises if a utility had both Section (c) and Section (d) appeals proceeding simultaneously. As we construe the statute, the Commissioner must notify the various counties of the conclusion of the appeal and its result at the conclusion of the Section (c) appeal. Then, if no local appeal is still pending, the assessment can be calculated and the taxes may be remitted, with interest at the rate provided by law for judgments. See OCGA § 48-2-18 (c) (last sentence). If a local appeal is still pending when the Section (c) appeal is concluded, the provisions for the payment of taxes during the pendency of an appeal would apply. See, e.g., OCGA § 48-5-29.

3. Utilities' motions to enjoin the counties from assessing taxes at an amount greater than that finally established in the Fulton County appeal: For the reasons stated in Division 1, above, the final amount of each county's assessment is not governed solely by the outcome of the Fulton County appeal. Therefore, the trial court properly denied the utilities' motions.

4. Counties' motions to dismiss for lack of jurisdiction: The counties argue that the utilities should not be allowed to circumvent the procedures provided in OCGA § 48-2-18 by joining all of the counties in the Fulton County action. We agree. As we stated in Division 1 of this opinion, the statute provides for administrative appeals in each county where the local board of assessors alters the "proposed assessment" before issuing its "final assessment." These appeals, the Section (d) appeals, cannot be circumvented by joining the counties as defendants in a Section (c) appeal before the Fulton County Superior Court. The utilities' challenges to the final assessments issued by the various county boards of tax assessors should have been dismissed.

On the other hand, the counties have not argued nor provided any authority for the dismissal of the portions of the utilities' complaints that seek a declaratory judgment to construe the amended statute. Therefore, the court properly denied the motions to dismiss these claims.

In conclusion, we acknowledge that the appeal route for utilities may be a rough and rocky road. Indeed, it may require further legislative revision. However, under the facts presently in the record, and given our interpretation of the statute, we cannot say that the trial court erred in denying injunctive relief. In sum, we hold that the trial court properly denied all motions, except the counties' motions to dismiss the claims that seek to challenge the merits of the final assessments. The case is remanded for further proceedings.

*Judgment affirmed in part, reversed in part, and remanded. Clarke, C. J., Smith, P. J., Weltner, Hunt, Benham, Fletcher, JJ., and Chief Judge George H. Carley concur. Bell, J., disqualified.*

DECIDED JULY 5, 1990 —
RECONSIDERATION DENIED JULY 26, 1990.

*Chilivis & Grindler, Nickolas P. Chilivis, John K. Larkins, Jr., David B. Poythress,* for TELECOM*USA, Inc., Colonial Pipeline Co., Plantation Pipe Line Co.

*Nelson & Brady, G. Carey Nelson, Sell & Melton, E. S. Sell, Jr., Elbert Sidney Johnson, Thomas L. Murphy, David L. Mincey, Jr., Cynthia G. Weaver, Charles Jeffrey Liipfert, Clifton C. Fay, Walter James Gordon, Edward L. Long, Jr., Guy D. Pfeiffer, Ronald H. Rentz,* for Bibb County Bd. of Tax Assessors et al.

*Michael J. Bowers, Attorney General, David A. Runnion, Sr., Assistant Attorney General, Lucy T. Sheftall,* for Collins et al.

*Lawrence E. Gill, Paul D. Leavitt, Richard W. Bell,* amicus curiae.