AMERICAN CIVIL LIBERTIES UNION
OF GEORGIA, et al., Plaintiffs,

v.

Zell MILLER, et al., Defendants.

Civil Action No. 1:96–cv–2475–MHS.

United States District Court,
N.D. Georgia,
Atlanta Division.

June 23, 1997.

Final Order Aug. 7, 1997.

---

***ORDER***

SHOOB, Senior District Judge.

This action is before the Court on plaintiffs' motion for preliminary injunction and defendants' motion to dismiss. For the reasons stated below, the Court grants plaintiffs' motion and denies defendants' motion.

*Factual Background*

Plaintiffs bring this action for declaratory and injunctive relief challenging the constitutionality of Act No. 1029, Ga. Laws 1996, p. 1505, codified at O.C.G.A. § 16–9–93.1 ("act" or "statute"). The act makes it a crime for

> any person ... knowingly to transmit any data through a computer network ... for the purpose of setting up, maintaining, operating, or exchanging data with an electronic mailbox, home page, or any other electronic information storage bank or point of access to electronic information if such data uses any individual name ... to falsely identify the person ...

and for

> any person ... knowingly to transmit any data through a computer network ... if such data uses any ... trade name, registered trademark, logo, legal or official seal, or copyrighted symbol ... which would falsely state or imply that such person ... has permission or is legally authorized to use [it] for such purpose when such permission or authorization has not been obtained.

The parties vigorously dispute the scope of the act. Plaintiffs, a group of individuals and organization members who communicate over the internet, interpret it as imposing unconstitutional content-based restrictions on their right to communicate anonymously and pseudonymously over the internet, as well as on their right to use trade names, logos, and other graphics in a manner held to be constitutional in other contexts.

Plaintiffs argue that the act has tremendous implications for internet users, many of whom "falsely identify" themselves on a regular basis for the purpose of communicating about sensitive topics without subjecting themselves to ostracism or embarrassment. Plaintiffs further contend that the trade

name and logo restriction frustrates one of the internet's unique features—the "links" [1] that connect web pages on the World Wide Web and enable users to browse easily from topic to topic through the computer network system. Plaintiffs claim that the act's broad language is further damaging in that it allows for selective prosecution of persons communicating about controversial topics.

Defendants contend that the act prohibits a much narrower class of communications. They interpret it as forbidding only fraudulent transmissions or the appropriation of the identity of another person or entity for some improper purpose. Defendants ask the Court to abstain from exercising jurisdiction in this case in order to give the Georgia Supreme Court an opportunity to definitively interpret the act.

*Motion for Preliminary Injunction*

In order to prevail on a preliminary injunction motion, plaintiffs must establish 1) a substantial likelihood of success on the merits; 2) a substantial threat of irreparable injury if the injunction is not granted; 3) that the threatened injury to the plaintiffs outweighs the harm an injunction may cause defendants; and 4) that granting the injunction would not disserve the public interest. *Teper v. Miller,* 82 F.3d 989, 992–93 n. 3 (11th Cir.1996). The Court concludes that plaintiffs have satisfied each of these requirements and are thus entitled to injunctive relief.

1. *Likelihood of Success on the Merits* [2]

■ In their motion to dismiss, defendants assert two affirmative defenses which, if persuasive, would make plaintiffs' success on the merits unlikely. First, defendants argue that because plaintiffs have not been prosecuted or threatened with prosecution under the act, no live controversy exists and plaintiffs therefore lack standing to bring this action. The Court concludes, however,

that plaintiffs do have standing because "a credible threat of prosecution" exists. *Graham v. Butterworth,* 5 F.3d 496, 499 (11th Cir.1993). When plaintiffs filed this action "they intended to engage in arguably protected conduct, which the statute seemed to proscribe." *Id.* at 499. Furthermore, the rules of standing are relaxed in the first amendment context where "the statute's alleged danger is, in large measure, one of self-censorship; a harm that can be realized even without an actual prosecution." *Virginia v. American Booksellers Ass'n,* 484 U.S. 383, 384, 108 S.Ct. 636, 638, 98 L.Ed.2d 782 (1988).

■ Defendants also ask the Court to abstain from exercising jurisdiction over this case on the grounds that the law is ambiguous and in need of state court interpretation.[3] However, abstention should rarely be invoked in cases involving facial challenges to statutes allegedly violative of the first amendment. *Dombrowski v. Pfister,* 380 U.S. 479, 489–90, 85 S.Ct. 1116, 1122, 14 L.Ed.2d 22 (1965) (holding abstention "inappropriate for cases [where] . . . statutes are justifiably attacked on their face as abridging free expression"). The reluctance to abstain in first amendment cases recognizes that the delay abstention imposes has a further chilling effect on speech. *Zwickler v. Koota,* 389 U.S. 241, 252, 88 S.Ct. 391, 397–98, 19 L.Ed.2d 444 (1967).

■ The correct inquiry, when asked to abstain in a case involving a facial statutory challenge, is whether the statute is "fairly subject to an interpretation which will render unnecessary or substantially modify the federal constitutional question." *City of Houston v. Hill,* 482 U.S. 451, 468, 107 S.Ct. 2502, 2513, 96 L.Ed.2d 398 (1987). "If the statute is not obviously susceptible of a limiting construction, then even if the statute has never [been] interpreted by a state court tribunal

---

**1.** Links are often graphics or logos which, if "clicked on" by the user with a computer mouse, will transport the user to a different web page covering a new topic of information.

**2.** In this section of the order, the Court will also address arguments advanced in defendants' motion to dismiss.

**3.** Significantly, this argument contradicts defendants' contention that the statute is sufficiently clear to avoid vagueness and overbreadth challenges.

... it is the duty of the federal court to exercise its properly invoked jurisdiction." *Id.* The Court finds, as set forth below, that O.C.G.A. § 16–9–93.1 is not fairly subject to a limiting construction which would obviate its constitutional problems. Moreover, abstention would impose great costs on plaintiffs by further chilling their expression while they wait for an interpretation of the act by the Georgia Supreme Court or by forcing them to risk prosecution if they choose not to wait. Therefore, the Court finds that abstention is inappropriate in this case.

Having addressed defendants' affirmative defenses, the Court concludes that plaintiffs are likely to prevail on the merits of their claim. It appears from the record that plaintiffs are likely to prove that the statute imposes content-based restrictions which are not narrowly tailored to achieve the state's purported compelling interest. Furthermore, plaintiffs are likely to show that the statute is overbroad and void for vagueness.

■■■ First, because "the identity of the speaker is no different from other components of [a] document's contents that the author is free to include or exclude," *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 340–42, 115 S.Ct. 1511, 1516, 131 L.Ed.2d 426 (1995), the statute's prohibition of internet transmissions which "falsely identify" the sender constitutes a presumptively invalid content-based restriction. *See R.A.V. v. St. Paul*, 505 U.S. 377, 382, 112 S.Ct. 2538, 2542–43, 120 L.Ed.2d 305 (1992). The state may impose content-based restrictions only to promote a "compelling state interest" and only through use of "the least restrictive means to further the articulated interest." *Sable Communications of California, Inc. v. FCC*, 492 U.S. 115, 126, 109 S.Ct. 2829, 2836, 106 L.Ed.2d 93 (1989). Thus, in order to overcome the presumption of invalidity, defendants must demonstrate that the statute

furthers a compelling state interest and is narrowly tailored to achieve it.

Defendants allege that the statute's purpose is fraud prevention, which the Court agrees is a compelling state interest. However, the statute is not narrowly tailored to achieve that end and instead sweeps innocent, protected speech within its scope. Specifically, by its plain language the criminal prohibition applies regardless of whether a speaker has any intent to deceive or whether deception actually occurs. Therefore, it could apply to a wide range of transmissions which "falsely identify" the sender, but are not "fraudulent" within the specific meaning of the criminal code.

Defendants respond that the act does not mean what it says and that, instead, a variety of limiting concepts should be engrafted onto it. First, defendants propose to add an element of fraud, or a specific intent requirement of "intent to defraud" or "intent to deceive" to the act.[4] None of these terms or phrases appears in the statute, however, although they are expressly included in other Georgia criminal statutes which require proof of specific intent. *See, e.g.,* O.C.G.A. §§ 10–1–453, 16–9–1(a), 16–9–2, and 16–8–3.

Second, defendants contend that the act applies only to persons who misappropriate the identity of another specific entity or person. Again, there is nothing in the language of the act from which a reasonable person would infer such a requirement, and the General Assembly has specifically included analogous elements when it meant to do so. *See* O.C.G.A. § 10–1–453.

Third, defendants seek to limit the restriction on use of trade names, marks, and seals by collapsing the act's two clauses—suggesting that "use" of a mark is prohibited only when it would "falsely identify" the user. Without explanation, this construction borrows the "false identification" portion of the

---

4. The terms "fraud," "intent to defraud," and "intent to deceive," although used interchangeably by defendants, are not synonymous in the criminal code. *See, e.g., United States v. Godwin*, 566 F.2d 975, 976 (5th Cir.1978). Each term requires proof of different elements, and by using the terms interchangeably, defendants fail to explain which of the distinct elements should be applied to the statute.

Also, the word "falsely"—the only term which actually does appear in the statute—is synonymous with none of the above terms defendants seek to add. "Falsely" means merely "wrongly," "incorrectly," or "not truthfully." Webster's Third New Int'l Dictionary 819 (1976).

first clause and applies it to the second. In addition to not making sense grammatically, the interpretation also imports into the second clause all of the previously discussed interpretive problems with the phrase "falsely identify."[5]

In construing a statute, the Court must "follow the literal language of the statute 'unless it produces contradiction, absurdity or such an inconvenience as to insure that the legislature meant something else.'" *Telecom\*USA, Inc. v. Collins,* 260 Ga. 362, 363, 393 S.E.2d 235 (1990) (citing *Department of Transp. v. City of Atlanta,* 255 Ga. 124, 137, 337 S.E.2d 327 (1985)). Only if a statute is "readily susceptible to a narrowing construction" may such an interpretation be applied to save a questionable law. *American Booksellers Ass'n,* 484 U.S. at 397, 108 S.Ct. at 645. The words and phrases defendants seek to add to the act appear nowhere in it. Moreover, defendants' attempt to interpret the act is so confusing and contradictory that it could not possibly constitute grounds for rejecting the act's plain language. Even if the Court could impose a limiting construction on the act, defendants' brief provides no real guidance on what that construction should be, but instead offers a variety of very different possible interpretations in hopes that the Court will select one. The Court concludes, therefore, that the act is not readily susceptible to a limiting construction and that its plain language is not narrowly tailored to promote a compelling state interest.

For similar reasons, plaintiffs are likely to succeed on their overbreadth claim because the statute "sweeps protected activity within its proscription." *M.S. News Co. v. Casado,* 721 F.2d 1281, 1287 (10th Cir.1983) (citing *Erznoznik v. City of Jacksonville,* 422 U.S. 205, 212–13, 95 S.Ct. 2268, 2274–75, 45 L.Ed.2d 125 (1975)). In the first amendment context, the overbreadth doctrine, which invalidates overbroad statutes even when some of their applications are valid, *United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987), is based on the recognition that "the very existence of some broadly written laws has the potential to chill the expressive activity of others not before the Court." *Forsyth County v. Nationalist Movement,* 505 U.S. 123, 129, 112 S.Ct. 2395, 2401, 120 L.Ed.2d 101 (1992).

The Court concludes that the statute was not drafted with the precision necessary for laws regulating speech. On its face, the act prohibits such protected speech as the use of false identification to avoid social ostracism, to prevent discrimination and harassment, and to protect privacy, as well as the use of trade names or logos in non-commercial educational speech, news, and commentary—a prohibition with well-recognized first amendment problems.[6] Therefore, even if the statute could constitutionally be used to prosecute persons who intentionally "falsely identify" themselves in order to deceive or defraud the public, or to persons whose commercial use of trade names and logos creates a substantial likelihood of confusion or the dilution of a famous mark, the statute is nevertheless overbroad because it operates unconstitutionally for a substantial category of the speakers it covers. *Village of Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620, 634, 100 S.Ct. 826, 834–35, 63 L.Ed.2d 73 (1980).

---

5. To further confuse the matter, defendants suggest elsewhere in their brief that the second clause actually does mean what it says and prohibits all uses of marks which would imply permission for that use which has not been obtained. A fair reading of the clause, as written, is that it prohibits the current use of web page links. The linking function requires publishers of web pages to include symbols designating other web pages which may be of interest to a user. This means that an entity or person's seal may appear on hundreds or thousands of other web pages, just for the purpose of enabling the linking system. The appearance of the seal, although completely innocuous, would definitely "imply" to many users that permission for use had been obtained. Defendants have articulated no compelling state interest that would be furthered by restricting the linking function in this way.

6. Congress acknowledged the first amendment problems with banning non-commercial use of trademarks by limiting the scope of the new Federal Trademark Dilution Act to apply to commercial use only. *See* 15 U.S.C. § 1125(c)(4); H.R. No. 104–374 (1995), 1995 U.S. Code Cong. & Admin. News 1029.

Finally, plaintiffs are likely to succeed on their claim that the statute is unconstitutionally vague. The void-for-vagueness doctrine requires a criminal statute to "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). Like the overbreadth doctrine, the policies underlying the vagueness rule apply with special force where the statute at issue restricts speech. *ACLU v. Reno*, 929 F.Supp. 824, 860 (E.D.Pa.1996). The Court concludes that plaintiffs are likely to prove that the statute is void for vagueness because it 1) does not give fair notice of the scope of conduct it proscribes; 2) is conducive to arbitrary enforcement; and 3) infringes upon plaintiffs' free expression. *See Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972).

First, the act fails to give fair notice of proscribed conduct to computer network users by failing to define the following terms and phrases: "falsely identify," "use," "falsely imply," and "point of access to electronic information." These undefined terms provide inadequate notice of the scope of proscribed conduct to persons of ordinary intelligence and thus void the act for vagueness.

The statute criminalizes computer transmissions which "falsely identify" the sender, yet fails to state whether or not proof of specific intent to deceive, or proof of actual deception, is required. Plaintiffs' affidavits demonstrate that, although they have no intent to deceive when sending transmissions which may "falsely identify" them and, indeed, have many legitimate and important reasons for concealing their identity, they cannot determine whether or not their conduct violates the act.

Similarly, the portion of the act relating to trade names and logos fails to define or adequately limit the word "use." Other statutes protecting intellectual property expressly limit the definition of "use" to use in a commercial context. *See, e.g.,* 15 U.S.C. § 1125 (federal trademark infringement law); O.C.G.A. § 10–1–440(b) (1994) (defining "use" within the meaning of Georgia trademark infringement laws); O.C.G.A. § 10–1–450 (1994) (Georgia trademark infringement law). In contrast, the only limiting concept of "use" in the act is that such use must "falsely imply" that permission to use the mark has been obtained. This restriction, which is also undefined and suffers from the same vagueness problems as the term "falsely identify," fails to provide sufficiently specific notice of proscribed conduct.

Finally, the act fails to explain the phrase "any data ... over the transmission facilities or through the network facilities of a local telephone network for the purpose of ... exchanging data with ... a point of access to electronic information." Plaintiffs contend that this phrase could mean that the act applies not only to computer transmissions per se, but also to transmissions by telephone, fax machine, answering machine, voice mail system, pager, or any other electronic device which might be connected to computer network facilities. The act provides no guidance about these potential applications.

Second, the act's vague provisions create a risk of arbitrary and discriminatory enforcement. As plaintiffs point out, not only does the act fail to notify potential defendants of proscribed conduct, but it also fails to notify law enforcement officials of what exactly is prohibited. The act's failure to specifically articulate proscribed conduct affords prosecutors and police officers substantial room for selective prosecution of persons who express minority viewpoints.

Third, the act's vagueness is particularly harmful because it chills protected expression. Plaintiffs' affidavits indicate that they have already altered what they believe to be innocent and legitimate behavior because of their inability to discern what exactly the act proscribes. Without court intervention, this self-censorship will continue until the act is amended, revoked, or definitively interpreted by the state supreme court.

For all of these reasons, the Court concludes that plaintiffs are likely to succeed on their claim that the act is void for vagueness,

overbroad, and not narrowly tailored to promote a compelling state interest.

### 2. *Substantial threat of irreparable injury*

 Plaintiffs have also demonstrated a substantial threat of irreparable injury in the absence of a preliminary injunction. The Supreme Court has held that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976). As described above, the act has already induced self-censorship. The Court concludes, therefore, that failure to enjoin enforcement of the act will force plaintiffs either to continue self-censorship or to risk criminal prosecution. Thus, plaintiffs have demonstrated a substantial threat of irreparable injury unless a preliminary injunction is issued.

### 3. *Balance of hardships*

The balance of hardships weighs heavily in plaintiffs' favor. As stated above, plaintiffs will suffer irreparable injury if prosecution under the statute is not enjoined. In contrast, Georgia already has in place many less restrictive means to address fraud and misrepresentation—the interests defendants claim the act at issue promotes. *See, e.g.,* O.C.G.A. § 16–8–3 (1996) (theft by deception); O.C.G.A. § 16–9–93(a)(2) (1996) (computer theft by deception); O.C.G.A. § 10–1–453 (1994) (unauthorized and deceitful use of name or seal of another); O.C.G.A. § 10–1–393 (Supp.1996) (unfair and deceptive consumer trade practices). Defendants contend that these statutes do not fully reach problematic behavior over the internet, but they fail adequately to explain why. If the act prevents some ill-defined category of fraud or deception not covered by existing laws, defendants do not articulate why they have a compelling interest in preventing that conduct on the internet but have done nothing to prevent the same practices in the print media. Therefore, the Court concludes that plaintiffs face substantially greater harms if the act is allowed to stand than defendants face if its enforcement is enjoined.

### 4. *Promotion of the Public Interest*

Finally, for all the reasons set forth above, a preliminary injunction will advance the public interest. "No long string of citations is necessary to find that the public interest weighs in favor of having access to a free flow of constitutionally protected speech." *Reno,* 929 F.Supp. at 851.

### 5. *Conclusion*

For the foregoing reasons, the Court DENIES defendants' motion to dismiss [# 11–1], GRANTS plaintiffs' motion for preliminary injunction [# 3–1], and enjoins defendants from enforcing O.C.G.A. § 16–9–93.1 pending a final determination on the merits of plaintiffs' complaint.

### *FINAL ORDER*

Upon consideration of the joint report of the parties regarding the need for further proceedings in the above-styled case, and for the reasons set forth in the Court's Order entered on June 23, 1997, which is incorporated herein by reference, it is accordingly hereby ORDERED, ADJUDGED and DECREED that pursuant to Rule 65 of the Federal Rules of Civil Procedure the defendants are PERMANENTLY ENJOINED from enforcing Act No. 1029, Ga. Laws 1996, pp. 1505–06, codified at O.C.G.A. § 16–9–93.1.