317 Ga. 288
FINAL COPY

S22G1247. FUNVESTMENT GROUP, LLC v.
CRITTENDEN.

LaGrua, Justice.

We granted certiorari in this case to decide whether revenue generated from the lease of a bona fide coin operated amusement machine ("COAM") qualifies as "gross revenues" exempt from taxation under OCGA § 48-8-3 (43).[1] Funvestment Group, LLC ("Funvestment"), the lessee of the COAMs at issue and the owner of the location where the COAMs are available for play, argues that revenues generated from the lease of COAMs are considered "gross revenues" exempt from sales and use tax. The Court of Appeals concluded that the subject lease revenues are not "gross revenues"

---

[1] OCGA § 48-8-3 (43) provides:
   The sales and use taxes levied or imposed by this article shall not apply to: . . . [g]ross revenues generated from all bona fide coin operated amusement machines which vend or dispense music or are operated for skill, amusement, entertainment, or pleasure which are in commercial use and are provided to the public for play which will require a permit fee under Chapter 27 of Title 50[.]

1

and that the exemption only applies to money inserted into COAMs for play.  See *Funvestment Group v. Crittenden*, 364 Ga. App. 447, 452 (1) (a) (875 SE2d 436) (2022). For the reasons that follow, we conclude that the Court of Appeals erred in reaching this conclusion, and we thus reverse the judgment of the Court of Appeals.

1. *Pertinent Facts and Procedural History*

Funvestment owns and operates an amusement facility in Norcross, Georgia, that contains an arcade room, party rooms for group events, a restaurant, an indoor driving track, and a computer lab equipped with touchscreen computers and simulators on which children can learn about driving safety. Some of the equipment used at Funvestment's facility, including arcade games, toy cars, and a train, are classified as COAMs.

Funvestment leases the COAMs from Tiny Towne International, Inc. ("Tiny Towne"), pursuant to a Location Rental Agreement. In accordance with that agreement and as payment for leasing the COAMs, Funvestment agreed to pay Tiny Towne "[ten]

2

percent of the total gross revenue after deductions for state master license, state sticker fees, and refunds and [ten] percent of other gross income generated by [Funvestment's] business."[2] As discussed in more detail below, Funvestment's lease payments to Tiny Towne would ordinarily be subject to sales and use taxes under OCGA § 48-8-30 (d) (1). However, because OCGA § 48-8-3 (43) provides that "[g]ross revenues generated from bona fide coin operated amusement machines" are exempt from sales and use taxes, Funvestment and Tiny Towne contend they were not required to pay and remit sales and use taxes on the revenues generated by Funvestment's lease of the COAMs to the Georgia Department of Revenue ("DOR"). In May 2016, following a routine audit, the DOR issued a proposed assessment to Funvestment to collect the value of these unpaid taxes.

---

[2] The record reflects that all of the COAMs at Funvestment's facility have been registered with the Georgia Lottery Corporation and that Tiny Towne and Funvestment have paid for and obtained the requisite licenses and permits from the State to own and operate those machines.

Funvestment appealed the proposed assessment to the DOR, asserting that the revenues generated from the lease of the COAMs were exempt from sales and use tax under OCGA § 48-8-3 (43). Following a hearing, the DOR issued a decision concluding that the exemption in OCGA § 48-8-3 (43) did not apply to the income generated from Funvestment's lease of the COAMs because the statute contemplated only an exemption from tax on the "participation transaction" — i.e., from the actual play of the COAM by a person who has placed "a coin, or its equivalent" into the machine.

Funvestment appealed to the Georgia Tax Tribunal, which agreed with Funvestment's interpretation of OCGA § 48-8-3 (43). Relying on *Telecom\*USA, Inc. v. Collins*, 260 Ga. 362 (393 SE2d 235) (1990) and *Ga. Dept. of Revenue v. Owens Corning*, 283 Ga. 489 (660 SE2d 719) (2008), the Tax Tribunal concluded that OCGA § 48-8-3 (43) was clear, and pursuant to the clear language of that statute, "[t]he General Assembly unambiguously exempted all gross

4

revenues generated from COAMs for sales and use tax purposes," including revenues generated from lease payments. On this basis, the Tax Tribunal ruled that Funvestment was not obligated to pay sales and use tax on its lease payments to Tiny Towne as required by the proposed assessment.

The DOR appealed to the Superior Court of Fulton County, which reversed the Tax Tribunal, concluding that revenues generated from the lease of COAMs are not included in the exemption provided by OCGA § 48-8-3 (43). After granting Funvestment's discretionary application, the Court of Appeals affirmed the superior court, concluding that (1) the statute required that "the contemplated gross revenues" be "generated from" the playing of the actual COAMs, and (2) Funvestment's position failed to accord with "well-settled standards for reviewing taxation statutes" — namely, the standard found in *Owens Corning*, providing that "'[t]axation is the rule, and exemption from taxation is the exception.'" *Funvestment,* 364 Ga. App. at 451 (1) (a) (quoting

5

*Owens Corning*, 283 Ga. at 489). After determining that the "words

of the statutory provision are plain," id. at 455 (1) (b) (iii), the Court

of Appeals held that

> [t]he plain language of the exemption [in OCGA § 48-8-3
> (43)] means that the COAM itself must generate the
> revenue by vending or dispensing music or public play by
> inserting money. Because the *leases* do not constitute
> remuneration for vending or dispensing music or public
> play, the exemption clearly applies only to the money
> inserted into the COAMs for play, not leases of the
> COAMs themselves.

Id. at 449 (punctuation omitted; emphasis in original).

We granted certiorari to address the following questions: (1)

whether the Court of Appeals was correct to hold that the sales tax

exemption under OCGA § 48-8-3 (43) does not apply to

Funvestment's lease payments to Tiny Towne because such

payments are not "[g]ross revenues generated from" COAMs; (2)

whether, under OCGA § 48-8-3 (43), revenues must be generated by

participation-plays of the machines to be exempted; (3) whether the

funds must be the "revenue" of the taxpayer in order to qualify for

the exemption under OCGA § 48-8-3 (43), whether the subject lease

6

payments in this case are "revenue" belonging to Funvestment, as opposed to an expense, and whether that makes any difference in the analysis; and (4) how apparently competing interpretive presumptions regarding tax statutes might bear on the meaning of statutory provisions at issue in this case — compare, e.g., *Owens Corning*, 283 Ga. at 489 with *Telecom\*USA*, 260 Ga. at 363 (1).

2. *Legal Backdrop*

(a)    *COAMs*

COAMs are defined by statute as

> . . . every machine of any kind or character used by the public to provide amusement or entertainment whose operation requires the payment of or the insertion of a coin, bill, other money, token, ticket, card, or similar object and the result of whose operation depends in whole or in part upon the skill of the player, whether or not it affords an award to a successful player[.]

OCGA § 50-27-70 (b) (2) (A). "The term also means a machine of any kind or character used by the public to provide music whose operation requires the payment of or the insertion of a coin, bill, other money, token, ticket, card, or similar object such as jukeboxes

7

or other similar types of music machines." Id. There are two classes of COAMs — Class A machines and Class B machines. See OCGA § 50-27-70 (b) (3) and (4). The COAMs at issue in this appeal are Class A machines.[3]

Our General Assembly has enacted legislation extensively regulating the COAM industry in this State. See OCGA § 50-27-70 et seq. See also *Gebrekidan v. City of Clarkston*, 298 Ga. 651, 656-657 (3) (a) (784 SE2d 373) (2016) ("[T]he statutory scheme [regulating COAMs], which is now administered by the Georgia Lottery Corporation [ ], is extensive."). In accordance with those regulations and as a condition of operation, all COAMs, COAM owners, location owners, and locations where COAMs are available for play must be licensed by the Georgia Lottery Commission

---

[3] A "Class A machine" is defined as "a bona fide coin operated amusement machine" which "does not allow a successful player to carry over points won on one play to a subsequent play or plays" and "[p]rovides no reward to a successful player" — instead rewarding a successful player only with "free replays or additional time to play," "noncash merchandise," "points, tokens, tickets, or other evidence of winnings" that may be exchanged for noncash merchandise, or "any combination" thereof. OCGA § 50-27-70 (b) (3) (A)-(E).

("GLC"). See OCGA § 50-27-70 (a). More specifically, all location owners, like Funvestment, and COAM owners, like Tiny Towne, are required to pay an annual license fee to the GLC to obtain a location license and a master license, respectively. See OCGA §§ 50-27-70 (b) (6) and (7) and 50-27-71 (a.1) (requiring location license fees for location owners, who are defined in OCGA § 50-27-70 (b) (8) as the "owner or operator of a business where one or more [COAMs] are available for commercial use and play by the public"); OCGA §§ 50-27-70 (b) (10) and (13) and 50-27-71 (a) (requiring master license fees for COAM owners, who are defined in OGCA § 50-27-70 (b) (13) as "any person, individual, firm, company, association, corporation, or other business entity owning a [COAM] in this state"). Additionally, master license holders — i.e., COAM owners — must pay a permit fee and receive a "sticker" or "decal" for each COAM, showing "proof of payment of the permit fee." OCGA §§ 50-27-70 (b) (14), (18); 50-27-78. On appeal, Funvestment asserts that this COAM-licensing fee structure was established by the General

Assembly to replace the system of collecting revenue by levying sales and use taxes on COAM-generated revenues. See OCGA § 50-27-70 (a).[4]

(b)  *Sales and use tax*

In 1951, the General Assembly enacted the "Retailers' and Consumers' Sales and Use Tax Act," see Ga. L. 1951, p. 360, which authorized the levy and collection of a general sales and use tax, now codified at OCGA § 48-8-1 et seq.

> It is the intention of the General Assembly in enacting this article to exercise its full and complete power to tax the retail purchase, retail sale, rental, storage, use, and consumption of tangible personal property and the services described in this article except to the extent prohibited by the Constitutions of the United States and of this state and except to the extent of specific exemptions provided in this article.

OCGA § 48-8-1. In furtherance thereof, "[t]here is levied and imposed a tax on the retail purchase, retail sale, rental, storage, use, or consumption of tangible personal property and on the services

_____

[4] Amici curiae Georgia Amusement & Music Operators Association and Georgia Oilmen's Association submitted helpful briefing in support of Funvestment's contentions on appeal.

described in this article." OCGA § 48-8-30 (a). "Tangible personal property" is defined as "personal property that can be seen, weighed, measured, felt, or touched or that is in any other manner perceptible to the senses." OCGA § 48-8-2 (37).

According to these provisions, "[e]very purchaser of tangible personal property at retail in this state shall be liable for a tax on the purchase," which "shall be paid by the purchaser to the retailer[5] making the sale." OCGA § 48-4-30 (b) (1). The retailer is then obligated to "remit the tax" to the Georgia Department of Revenue ("DOR"), and when the tax is received by the DOR, it "shall be a credit against the tax imposed on the retailer." Id.

Similarly, under OCGA § 48-8-30 (d) (1), "[e]very person to whom tangible personal property in the state is leased or rented shall be liable for a tax on the lease or rental[.]" "The tax shall be paid to the person who leases or rents the property by the person to

---

[5] The "retailer" is defined as "[e]very person making a sale or sales of tangible personal property at retail." OCGA § 48-8-30 (b) (1).

11

whom the property is leased or rented." Id. "A person who leases or rents property to others" is a "dealer," and the dealer is required to collect the sales and use tax from the person to whom the property has been leased or rented and "remit the tax" to the DOR. Id. Pursuant to these provisions, leases of COAMs — including Funvestment's lease of the COAMs at issue here — would ordinarily be subject to sales and use tax unless an exemption or exception applies.

3. *Analysis*

In OCGA § 48-8-3, the General Assembly has exempted certain sales and transactions involving tangible personal property from the imposition of sales and use taxes, to include the sales tax exemption at issue in this case relating to COAMs, which was enacted in 1992. See OCGA § 48-8-3 (43) ("The sales and use taxes levied or imposed by this article shall not apply to: . . . [g]ross revenues generated from all bona fide coin operated amusement machines[.]"). On appeal, Funvestment contends that the exemption in OCGA § 48-8-3 (43)

12

clearly applies to leases of COAMs; that the term "gross revenues" includes the "leased income" a dealer or COAM owner receives from a person to whom a COAM has been leased; and that, since the enactment of this exemption in 1992, the General Assembly has consistently maintained and applied it to revenues generated from both the participation plays and leases of COAMs.

(a)     *Statutory construction*

To determine whether the sales tax exemption under OCGA § 48-8-3 (43) applies to revenues generated from the lease of COAMs, we must begin our analysis with the wording of the statute itself. As noted above, OCGA § 48-8-3 (43) provides:

> The sales and use taxes levied or imposed by this article shall not apply to: . . . [g]ross revenues generated from all bona fide coin operated amusement machines which vend or dispense music or are operated for skill, amusement, entertainment, or pleasure which are in commercial use and are provided to the public for play which will require a permit fee under Chapter 27 of Title 50.

"When construing a statute, we must presume that the General Assembly meant what it said and said what it meant." *Bell v.*

13

*Hargrove*, 313 Ga. 30, 32 (2) (867 SE2d 101) (2021) (citation and punctuation omitted). "Accordingly, we afford the statutory text its plain and ordinary meaning, viewing the statutory text in the context in which it appears, and reading the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would." Id. (citation and punctuation omitted).

Throughout this litigation, Funvestment has maintained the position that the plain language of OCGA § 48-8-3 (43) does not limit the exemption to revenue generated by playing COAMs, and "[t]he only natural reading of the exemption includes leased income in the gross revenues." The Court of Appeals determined that Funvestment's position lacked merit because it "disregard[ed] the express language requiring that the contemplated 'gross revenues' were 'generated from all bona fide coin operated amusement machines which vend or dispense music or are operated for skill, amusement, entertainment, or pleasure which are in commercial use and are provided for public play.'" *Funvestment*, 364 Ga. App. at

14

450-451 (1) (a) (citation omitted). Noting that "'[t]axation is the rule, and exemption from taxation is the exception,'" the Court of Appeals held that "[t]he statutory provision at issue here, OCGA § 48-8-3 (43), contains no clear and unambiguous expression of an exemption applicable to [Funvestment's] lease payments to Tiny Towne." Id. at 451-452 (quoting *Owens Corning*, 283 Ga. at 489). On this basis, the Court of Appeals affirmed the superior court, noting that "[t]he plain language of the exemption means that the COAM itself must generate the revenue by vending or dispensing music or public play by inserting money," so the exemption "clearly applies only to the money inserted into the COAMs for play, not leases of the COAMs themselves." Id. at 449 (punctuation omitted). We disagree and conclude that, by its plain terms, OCGA § 48-8-3 (43) covers revenues generated from the lease of COAMs as well.

"When, as here, statutory text is clear and unambiguous, our interpretive task begins and ends with the text itself." *Bell*, 313 Ga. at 32 (2) (citation and punctuation omitted). Our analysis largely

15

turns on the meaning of the phrase, "[g]ross revenues generated from all bona fide coin operated amusement machines." Neither the Georgia Public Revenue Code, OCGA § 48-1-1 et seq., nor the statutes regulating COAMs, see OCGA § 50-27-70 et seq., define "revenue," "gross revenue," or what it means to "generate" gross revenue. However, when the exemption in OCGA § 48-8-3 (43) was enacted in 1992, the term "revenue" was commonly defined as "the total income produced by a given source." *Revenue*, New Webster's Dictionary (1992). "Gross," as in "gross income," was commonly defined as "consisting of an overall total exclusive of deductions." *Gross*, New Webster's Dictionary (1992). And "generate" meant "to bring into existence" or "to be the cause of." *Generate*, New Webster's Dictionary (1992). Additionally, Black's Law Dictionary then defined the term "revenue" as "[g]ross income or receipts" and, in turn, defined "gross income" as the "[t]otal income from all sources before deductions, exemptions, or other tax reductions." *Revenue* and *Gross Income*, Black's Law Dictionary (6th ed. 1991). Thus, by

16

common usage and legal definition, the term "gross revenues" includes the "overall total" income from "a given source" or "all sources." *Revenue* and *Gross*, New Webster's Dictionary (1992); *Gross Income*, Black's Law Dictionary (6th ed. 1991).

The phrase, "[g]ross revenues generated from all bona fide coin operated amusement machines," OCGA § 48-8-3 (43), contains no words of limitation restricting the manner in which COAMs generate these revenues, and there are no contextual limitations provided elsewhere in OCGA § 48-8-3, the rest of the Georgia Public Revenue Code, OCGA § 48-1-1 et seq., or the statutes regulating COAMs, see OCGA § 50-27-70 et seq. Moreover, the phrase, "which vend or dispense music or are operated for skill, amusement, entertainment, or pleasure which are in commercial use and are provided to the public for play," simply describes the type of machines from which these revenues are generated — i.e., COAMs — it does not indicate that the gross revenues can only be generated by *playing* the COAMs. OCGA § 48-8-3 (43) Certainly, when a

customer inserts money into a COAM for play, it generates revenue for the location owner. See OCGA § 50-27-70 (b) (8). However, when a person to whom a COAM has been leased makes a lease payment on the subject COAM, it also generates revenue for the person leasing the COAM (i.e., the dealer or COAM owner). See OCGA § 50-27-70 (b) (13).

In this case, Tiny Towne leases the subject COAMs to Funvestment, and in this context, the COAMs generate income (or revenue) for Tiny Towne when Funvestment makes the corresponding lease payments. And, as noted above, in accordance with OCGA § 48-8-30 (d) (1), Funvestment would typically be required to pay sales and use taxes to Tiny Towne for its lease of these COAMs, and Tiny Towne would then be required to remit those taxes to the DOR, unless the exemption at issue — or some other exemption — applied.

Given the common and legal meanings of "revenue" and "gross revenue" delineated above, we conclude that the plain language of

18

the phrase, "[g]ross revenues generated from all bona fide coin operated amusement machines" set forth in OCGA § 48-8-3 (43) is unambiguous and applies to any revenues a COAM generates or brings into existence, which, in this case, are revenues generated by the lease of the COAMs and revenues generated by the playing of the COAMs. This is the most "natural and reasonable way" to read this statute. *Bell*, 313 Ga. at 32 (2) (citation and punctuation omitted). Thus, the lease payments Funvestment makes to Tiny Towne for its lease of the COAMs — which also constitute income to Tiny Towne — are exempt from sales and use taxes under OCGA § 48-8-3 (43), and Funvestment is not obligated to pay nor is Tiny Towne obligated to remit any sales and use taxes to the DOR on these lease revenues.

(b)   *The standard to be applied in analyzing tax statutes*

We also asked the parties to address on certiorari how the "interpretive presumption" regarding tax statutes delineated in *Owens Corning*, 283 Ga. at 489, and the "apparently competing

interpretive presumption" of tax statutes outlined in *Telecom\*USA*, 260 Ga. at 363 (1), might bear on the meaning of OCGA § 48-8-3 (43) and any other statutes at issue in this case. We ultimately conclude that *Owens Corning* and *Telecom\*USA* are not incompatible as far as the standard to be applied in analyzing tax statutes in general — these cases merely distinguish between the standards to be applied when there is ambiguity in either a tax statute imposing a tax or a tax statute creating an exemption to a tax — and we need not apply either of these standards here because we have concluded that OCGA § 48-8-3 (43) is not ambiguous.

In *Owens Corning*, 283 Ga. at 489, this Court announced the "well-settled" standard for analyzing tax statutes.

> Taxation is the rule, and exemption from taxation is the exception. And exemptions are made, not to favor the individual owners of property, but in the advancement of the interests of the whole people. Exemption, being the exception to the general rule, is not favored; but every exemption, to be valid, must be expressed in clear and unambiguous terms, and, when found to exist, the enactment by which it is given will not be enlarged by construction, but, on the contrary, will be strictly construed.

20

Id. (citation and punctuation omitted). When a statute creating a tax exemption is ambiguous, "the statute must be interpreted in favor of the tax, not the exemption." Id. at 490. See also *Amoena Corp. v. Strickland*, 248 Ga. 496, 500 (3) (283 SE2d 894) (1981) (holding that "tax exemptions are to be strictly construed against the taxpayer and doubts resolved in favor of taxability"). On the other hand, "when a taxing statute [imposing a tax] has doubtful meaning, it must be construed liberally in favor of the taxpayer and against the State." *Telecom\*USA*, 260 Ga. at 364 (1). See also *Cherokee Brick & Tile Co. v. Redwine*, 209 Ga. 691, 692 (1) (75 SE2d 550) (1953) (explaining that, when a tax statute imposing a tax "is of doubtful meaning, it must be construed liberally in favor of the taxpayer and against the taxing authority"; whereas, "any ambiguity in an alleged exemption from taxation must be construed favorably to the State and against the taxpayer").

Because the statute at issue in this case — OCGA § 48-8-3 (43) — creates an "exemption from taxation," if there was any ambiguity

in the statute, we would resolve it in favor of the State — i.e., in favor of taxability. *Cherokee Brick & Tile Co.*, 209 Ga. at 692 (1). See also *Owens Corning*, 283 Ga. at 490. However, as we concluded above, the plain language of OCGA § 48-8-3 (43) is "clear and unambiguous," and thus, we need not construe it in favor of the State but in accordance with its explicit terms. *Owens Corning*, 283 Ga. at 489.

4. *Conclusion*

Accordingly, because the plain language of OCGA § 48-8-3 (43) applies to revenues generated by COAMs, which includes revenues generated from the lease of COAMs and revenues generated from the participation plays of COAMs, we conclude that the Court of Appeals erred in concluding that the exemption did not apply to the lease revenues generated in this case, and we reverse the judgment of the Court of Appeals.

*Judgment reversed. All the Justices concur, except Colvin and Pinson, JJ., disqualified.*

Decided September 19, 2023.

Certiorari to the Court of Appeals of Georgia — 364 Ga. App. 447.

*Wimberly Lawson Steckel Schneider & Stine, Les A. Schneider, Paul Oliver, Thomas L. Walker*, for appellant.

*Christopher M. Carr, Attorney General, Logan B. Winkles, Julie A. Jacobs, Deputy Attorneys General, Ronald J. Stay, Senior Assistant Attorney General, Melody Chapman, Paul R. Draper, Assistant Attorneys General, Stephan J. Petrany, Solicitor-General, Ross W. Bergethon, Deputy Solicitor-General*, for appellee.

*Balch & Bingham, Patrick N. Silloway, J. Mitchell Fucetola; Robbins Alloy Belinfante Littlefield, Joshua B. Belinfante; Bradley Arant Boult Cummings, Christopher S. Anulewicz*, amici curiae.