Terrence J. WHITE, Plaintiff,

v.

Thurbert E. BAKER, et al., Defendants.

No. 1:09–cv–151–WSD.

United States District Court,
N.D. Georgia,
Atlanta Division.

March 3, 2010.

Elizabeth Grace Eager, Emmet J. Bondurant, II, Nicole G. Iannarone, Bondurant Mixson & Elmore, Atlanta, GA, for Plaintiff.

Paige Elizabeth Boorman, Joseph J. Drolet, Attorney General's Office, Atlanta, GA, Winston A. Denmark, Fincher Denmark & Williams LLC, Jonesboro, GA, for Defendants.

## OPINION AND ORDER

WILLIAM S. DUFFEY, JR., District Judge.

This matter is before the Court on Plaintiff Terrance J. White's ("Plaintiff" or "White") Motion for Preliminary Injunction [28]. The Court, having considered the memorandum submitted by the parties and the argument of counsel presented at the August 25, 2009, hearing on Plaintiff's injunction motion, now considers Plaintiff's request for preliminary injunctive relief.[1]

## I. BACKGROUND

In 1994, Congress passed the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act. 42 U.S.C. § 14071. Pursuant to this legislation, each state, the District of Columbia, and the federal government enacted statutes requiring persons convicted of crimes against children and other child sex offenses to register and provide certain personal and background information as an aid to protect children from child predators. These registry statutes where upheld by the United States Supreme Court as enforceable civil regulatory enactments designed to protect the public and thus had a "legitimate nonpunitive governmen-

tal objective." *Smith v. Doe*, 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003).

The Georgia General Assembly passed its child offender registration legislation in 1996. O.C.G.A. § 42–1–12 (1996) (the "Registration Act"). The statute requires sexual offenders to comply with "the registration requirements of [Section 42–1–12] for the entire life of the sexual offender." *Id.* at subsection f(7). Specifically, the offender must provide, to the sheriff of the county in which the offender resides, the information required by O.C.G.A. § 42–1–12(a)(16). The offender must also provide to the sheriff, within 72 hours, updates to the information required by O.C.G.A. § 42–1–12(a)(16). Failure of a sex offender to comply with the requirements of the statute, including by providing the information required by subparagraph (a)(16) and updates, constitutes a felony offense punishable by a period of incarceration of not less than ten (10), but not greater than thirty (30), years.

Sections of 42–1–12 define the information required to be reported by a sexual offender to the sheriff in the county where the offender resides.[2] Subsection (*o*) provides that the information reported "shall be treated as private data" and may be disclosed only to (1) "law enforcement agencies for law enforcement purposes," and (2) government agencies "conducting confidential background checks." O.C.G.A. § 42–1–12(*o*). Subsection (*o*) further provides: "The Georgia Bureau of Investigation or any sheriff maintaining records required under this Code section shall, in addition to the requirements of this Code section [regarding informing]

---

1. The Defendants in this action, in addition to Defendant Baker, include Sonny Perdue, Vernon M. Keenan, Kem Kibrough, and Tracy Graham–Lawson, in their official and individual capacities.

2. Under O.C.G.A. § 42–1–12(h)(1) a sheriff is required, within 72 hours, to transmit registration information to the Georgia Bureau of Investigation which must, in turn, and within 24 hours, report the registration information to the Federal Bureau of Investigation.

the public of the presence of sexual offenders in each community, release such other relevant information collected under this Code section that is necessary to protect the public concerning sexual offenders required to register under this Code section." *Id.*

In 2008, the Georgia General Assembly amended O.C.G.A. § 42–1–12(a)(16) by expanding the elements of information that a sexual offender is required to provide to the sheriff in the county where the offender resides. Before 2008, the Registration Act required that a sex offender report to the sheriff his or her name, social security number, age, race, sex, date of birth, height, weight, hair color, eye color, fingerprints, photograph, address, place of employment, place of work, vehicle identification information, and enrollment at any institutions of higher education. O.C.G.A. § 42–1–12(a)(16)(A–J). In 2008, the General Assembly added a subsection to O.C.G.A § 42–1–12(a)(16). New subsection (a)(16)(K) imposes a new information reporting requirement. In addition to the information required previously to be reported and updated, sex offenders are now required to provide and update information about their internet identity. Specifically, subsection (K) of O.C.G.A. § 42–1–12(a)(16) requires that a registered sex offender provide to law enforcement officials their "E-mail addresses, usernames, and user passwords ("Internet Identifiers" or "internet identifying information")." O.C.G.A § 42–1–12(a)(16)(K) (the "2008 Amendment"). The term " '[u]sername' means a string of characters chosen to uniquely identify an individual who uses a computer or other device with Internet capability to gain access to e-mail messages and interactive online forums." O.C.G.A. § 42–1–12(a)(21.1). The term " '[u]ser password' means a string of characters that enables an individual who uses a computer or other device with Internet capability to gain access to e-mail messages and interactive online forums." *Id.* at (a)(21.2) [3] It is the internet identification information reporting requirements that is the subject of this case.

Plaintiff Terrance J. White ("Plaintiff" or "White") previously was convicted of sexual offenses which require him to register under O.C.G.A. § 42–1–12. On the effective date of the 2008 Amendment, Plaintiff had completed serving the sentence imposed for the sexual offense of which he was convicted and had completed the term of supervision following his release. Because the Registration Act imposes a lifetime reporting obligation to provide the information required by section (a)(16), including new subsection (K) requiring the reporting of internet identifiers, Plaintiff is obligated to comply with Section (a)(16). Plaintiff is a frequent user of the internet, including to post on blogs and to chat. In these communication activities he sometimes uses his real name. At other times he uses a pseudonym so that his discussions and online communications are anonymous.

Plaintiff brings this action under 42 U.S.C. § 1983. He claims that (i) the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701–11, field or conflict preempts enforcement of the 2008 Amendment; (ii) the 2008 Amendment is a presumptively invalid content-based restriction and is a prior speech restraint, thus violating Plaintiff's First Amendment right

---

**3.** The term "E-mail address" is not defined in the statute but there does not appear to be a dispute that it means an address used by an individual to receive email communications and from which they are sent. "Interactive online forum" also is not defined but the parties appear to agree the term includes chat rooms and other locations on the internet where interactive discussions occur or comments are posted.

to anonymous speech; (iii) the 2008 Amendment is unenforceable because it is void for vagueness; (iv) the 2008 Amendment infringes on Plaintiff's right to private association; and (v) the 2008 Amendment violates his Fourth Amendment rights by constituting an actual or constructive unconstitutional seizure of information. Plaintiff seeks an injunction to prohibit enforcement of the requirement for sexual offenders to provide the internet identifier information required by the 2008 Amendment.[4]

Defendants claim this matter is not ripe to be heard because Plaintiff claims only that his rights might be violated if law enforcement officials exceed their authority and use the internet identifier information to access or disclose stored communications. Defendants also claim that Plaintiff cannot show a likelihood of success on the merits because the SCA does not field preempt or conflict preempt the Registration Act's personal information reporting requirements, including the 2008 Amendment, that the 2008 Amendment does not infringe Plaintiff's First or Fourth Amendment rights, because there are sufficient state interests in collecting the information required under the 2008 Amendment, that the statute is not otherwise overbroad or vague and does not violate the *ex post facto* clause. Thus, Defendants argue, injunctive relief should not be granted.

The Court turns to these interesting and important issues.

## II. DISCUSSION AND ANALYSIS

### A. *Standard for Preliminary Injunction*

■ To be eligible for preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure, a movant must show: (1) a substantial likelihood of prevailing on the merits; (2) that Plaintiff will suffer irreparable injury if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the opposing party; and (4) that if granted, the injunction would not be adverse to the public interest. *See Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir.2005); *Parker v. State Bd. of Pardons and Paroles*, 275 F.3d 1032, 1034–35 (11th Cir.2001); *Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir.1988).

■ Preliminary injunctive relief is a drastic and extraordinary remedy which should not be granted unless the movant can clearly establish each of the four elements. *Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir.2003). "The burden of persuasion on all of the four requirements is at all times upon the plaintiff." *Canal Authority of Florida v. Callaway*, 489 F.2d 567, 573 (5th Cir.1974).[5]

### B. *Federal Preemption*

■ Under the Supremacy Clause, when state law conflicts, or is incompatible, with federal law, federal law preempts

---

4. The parties have consented to interim injunctive relief against the enforcement of the 2008 Amendment so the Court can consider the pending Motion for Preliminary Injunction.

5. White claimed, for the first time in his Reply in Support of Plaintiff's Motion for Preliminary and Permanent Injunction and Declaratory Relief, that the Clayton County Defendants did not oppose an injunction. Although the Court considers this argument not timely made, the Clayton Defendants stated at the August 25, 2009, hearing that they oppose the injunction and have adopted the submission and argument made by the co-defendants in this case. The Court acknowledges their opposition to the entry of a preliminary injunction.

the state legislation. Preemption generally occurs in three ways: (1) where Congress has expressly preempted state law; (2) where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law ("field preemption"); or (3) where federal law conflicts with state law ("conflict preemption"). *See Barnett Bank of Marion County v. Nelson,* 517 U.S. 25, 31, 116 S.Ct. 1103, 134 L.Ed.2d 237 (1996). In this case, Plaintiff asserts that field and conflict preemption apply.

 Congress does not "cavalierly pre-empt state-law causes of action." *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996). The "presumption is that the state or local regulation of matters related to health and safety is not invalidated under the Supremacy Clause." *Hillsborough County v. Automated Med. Lab.,* 471 U.S. 707, 715, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985). *See also Barnhill v. Teva Pharmaceuticals USA, Inc.,* 2007 WL 6947996 *2, 2007 U.S. Dist. LEXIS 44718, *6 (S.D.Ala. Apr. 24, 2007). Where a party alleges that Congress has legislated so comprehensively that federal law occupies an entire field of regulation leaving no room for state law (field preemption) or that federal law conflicts with state law (conflict preemption), the party alleging preemption must "present a showing of implicit preemption of the whole field, or a conflict between a particular local provision and the federal scheme that is strong enough to overcome the presumption that state and local regulation of health and safety matters can constitutionally coexist with federal regulations." *Hillsborough County,* 471 U.S. at 716, 105 S.Ct. 2371.

 White first contends the SCA "so pervasively regulates in the field ... that Congress left no room for states to supplement" regulation in the claimed preempted field. White argues that the SCA

"preempts the field due to its broad language and pervasive regulatory scheme." (Pl.'s Br. 7.) White next alleges conflict preemption, contending that the 2008 Amendment "provides the keys to access registrants' accounts without permission, frustrating the SCA's purpose of protecting the privacy of online communications." (Pl.'s Br. 8.) Fundamental to White's argument is that the 2008 Amendment requires registrants to "disclose their internet identities *and* permit the government to monitor their communication." (*Id.* at 9.) The argument misinterprets the requirements of the SCA and of the 2008 Amendment. There is no preemption here.

█ The SCA applies to electronic communications and stored communications, providing:

> [W]hoever intentionally accesses without authorization a facility through which an electronic communication service is provided; or intentionally exceeds an authorization to access that facility and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system shall be punished. . . .

18 U.S.C. § 2701(a). By its terms, the SCA limitedly prohibits a person, without authorization, from "accessing an electronic communication service, or obtaining an electronic communication while it is still in electronic storage." *Pure Power Boot Camp v. Warrior Fitness Boot Camp,* 587 F.Supp.2d 548, 555 (S.D.N.Y.2008).

 Plaintiff appears to argue the SCA preempts all regulations relating to the making and storing of online electronic communications. The express provisions of the SCA, however, only prohibit unauthorized access to communication facilities. 18 U.S.C. § 2701. Specifically exempt from the SCA's purview is disclosure of communications to law enforcement for

certain purposes and to governmental entities under other circumstances. 18 U.S.C. §§ 2702(b)(6) and 2703(a). The SCA does not expressly, or impliedly, comprehensively regulate the field of internet communications, communication means, or communication storage. Indeed, it specifically opts out of regulating, in various circumstances, the communication of information to law enforcement and government agencies

The 2008 Amendment does regulate electronic communication or storage and does not authorize access to communications or a database of them. The state regulation only requires a registrant to disclose the Internet Identifiers the registrant uses to engage in communications or which may identify those communications of his which may be stored. To the extent the 2008 Amendment allows disclosure, it is not of communications—active or stored.[6] There is no field preemption here.

■ Conflict preemption occurs only when "state law conflicts or is incompatible with federal law." *Surrick v. Killion* 449 F.3d 520, 531 (3rd Cir.2006). This kind of preemption arises when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," or it is "impossible for a ... party to comply with both state and federal law." *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 152–153, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982) (internal quotations and citations omitted); *Geier v. Amer. Honda Motor Co., Inc.,* 529 U.S. 861, 899, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000).

■ Conflict preemption also does not apply here. The 2008 Amendment requires sex offender registrants to provide information in the form of the sex offender's internet user names and passwords. While this internet identifier information is permitted to be provided to law enforcement personnel for the purposes stated in O.C.G.A. § 42–1–12(*o* ), the SCA prohibits only unauthorized access. The SCA does not prohibit the law enforcement and government access allowed under the Registration Act, which is limited to internet identifying information. Indeed, as already was noted, there are a variety of instances where the SCA allows communications information to be provided to law enforcement and government agencies.[7]

The SCA does not preempt the entire field of online communications as White suggests and it does not conflict with the provisions of the Registration Act at issue in this case. In short, the SCA does not preempt the 2008 Amendment.

C. *Ripeness*

■ Defendants next contend that the issues presented by White in this action are not ripe for adjudication. Specifically, Defendants contend that no government entity or other person has sought to access White's or any other registrant's electronic communications and thus there is no constitutional harm that is ripe to be litigated.

---

**6.** It is only a disclosure of identifiers which White himself discloses to others to engage in his online communication.

**7.** White also argues that because the Registration Act potentially permits law enforcement to release his Internet Identifiers to the public, *see* O.C.G.A. § 42–1–12(*o* )(3), there is a likelihood of unauthorized access of his electronic communications in violation of the SCA. As discussed in detail below, section 42–1–12(*o* )(3) and the possibility that internet identifying information might be released to the public is troubling. The Registry Statute, however, does not mandate the public disclosure of Internet Identifiers, and the Court concludes that a speculative application of the statute is inappropriate.

"For [a] controversy to be ripe, the complained-of injury must be immediate or imminently threatened." *Wilderness Society, et al. v. Alcock, et al.,* 83 F.3d 386, 390 (11th Cir.1996). "For a court to have jurisdiction, [a] claim must be sufficiently mature and the issues sufficiently defined and concrete, to permit effective decision-making by the court." *Harris v. Mexican Specialty Foods, Inc.,* 564 F.3d 1301, 1308 (11th Cir.2009). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed, may not occur at all." *Id.*

 Whether an issue is ripe for adjudication depends on whether the issue in a case presents "a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract." *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979). A controversy is particularly susceptible to being found ripe where a state passes a regulation or statute that deems certain conduct to be illegal and a party has a constitutional right to engage in the action the regulation or statute makes illegal.

In *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), the Supreme Court set out the basic criteria for pre-enforcement ripeness of a claim challenging a governmental regulation. The Court stated that two factors are required to be evaluated: (i) the fitness of the issues for judicial decision and (ii) the hardship to the parties of withholding court consideration. *Id.* at 149, 87 S.Ct. 1507. In applying these criteria, the Court in *Abbott Laboratories* asked if additional factual development in that case was necessary and whether the regulations constituted a final agency action. *Id.* at 149–52, 87 S.Ct. 1507. In evaluating the hardship on the parties if court consider-

ation was withheld, the Court asked whether the regulation impact was direct and immediate. *Id.* at 152, 87 S.Ct. 1507.

This analytical framework in *Abbott Laboratories* has been applied in cases where a person contends a criminal statute affects his exercise of a constitutional right. In *Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), the Court considered a statute that made it a criminal trespass to prohibit the distribution of handbills criticizing the Viet Nam war. Even though the statute had not been enforced against the plaintiff, it found the threat of prosecution was sufficient to present an actual controversy. *Id.* at 459, 94 S.Ct. 1209. The Court found: "It is not necessary that [a person] first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims denies the exercise of his constitutional rights." *Id.*

More recently, the Supreme Court has relaxed the imminent threat requirement in actions threatened by the government generally. In *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007), the Court found that a claim challenging a state statute's constitutionality can be ripe even where an imminent threat of prosecution does not exist. The Court held: "The dilemma posed by hard coercion—putting the challenger to the choice between abandoning his rights or risking prosecution—is 'a dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate.'" *Id.* at 129, 127 S.Ct. 764. *See also Epperson v. Arkansas,* 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968) (public school biology teacher's claim statute prohibiting teaching of evolution was ripe even though no threat of enforcement against her); *Kucharek v. Hanaway,* 902 F.2d 513, 516 (7th Cir.1990) (found ripe a claim by person selling sexually explicit material that stat-

ute prohibiting obscenity was unconstitutional where person feared prosecution).

White claims the state may not unconditionally require him to provide his email addresses, user names, and passwords as required by the 2008 Amendment. The parties both acknowledge that these information elements are required to be provided to the sheriff in a registrant's county of residence and that failure to comply constitutes a crime under the Registration Act. The constitutional issues here are uniquely suited to a judicial decision and Plaintiff suffers a hardship by having to provide the required information because he contends the threat of prosecution chills his First Amendment rights. In a way, the Defendants also suffer a hardship because until the constitutionality of the internet identifier information requirement is resolved, they will not know what information will be available as they seek to protect children from adult sexual predators. On the facts here, the Court determines that Plaintiff's constitutional claim presents a real, substantial controversy between the Plaintiff and Defendants, that is definite and concrete, and which is suited for judicial resolution. *Babbitt*, 442 U.S. at 298, 99 S.Ct. 2301; *MedImmune*, 549 U.S. at 127, 127 S.Ct. 764. Defendants' argument that Plaintiff's claim is not ripe for adjudication is not persuasive.

### D. *First Amendment Right to Free Speech*

▉▉▉▉▉ White's central argument in this action is that the 2008 Amendment violates his First Amendment right to free speech. Specifically, he claims the 2008 Amendment and O.C.G.A. § 42–1–12(*o*) "deprive him of his right to anonymous speech, are a content-based prior restraint, do not meet the requirements of strict scrutiny, are overly broad and are impermissibly vague." (Pl.'s Br. 9.) Following some brief background information, the Court addresses each of these contentions in turn.

### 1. *Background*

Plaintiff brought his action after the United States District Court for the District of Utah entered its September 25, 2008, decision in *Doe v. Shurtleff*, 2008 WL 4427594 (D.Utah Sept.25, 2008). In *Shurtleff*, the Court considered whether the Utah sex offender registry statute (the "Utah Registry Statute") violated Doe's First Amendment rights by requiring him to provide internet identifiers and addresses to the Utah Department of Corrections ("UDOC"). Doe was required, as a convicted sex offender, to provide to the UDOC his "internet identifiers and the addresses [he] used for routing or self-identification in Internet communications or postings." *Id.* at *1. He also was required to provide "the name and Internet addresses of all websites on which [he] was registered using an online identifier, including all online identifiers and passwords used to access those websites." *Id.* at *1. The Utah Registry Statute defined "online identifier" as "any electronic mail, chat, instant messenger, social networking, or similar name used for Internet communication." *Id.* at *2. Failure to provide this internet identifier information constituted a felony under the Utah law. *Id.* The Defendant in *Shurtleff* acknowledged the identifying information required to be disclosed was available to be used to investigate crimes, but the head of the UDOC registry program stated he had interpreted the statute as not allowing monitoring of non-criminal online conduct. Doe moved to enjoin enforcement of the requirement that he disclose his internet identification information, claiming his First Amendment right to anonymous communication online was chilled.

In considering Doe's constitutional challenge, the Utah District Court noted the long-established right to anonymous political speech, observing that the United States Supreme Court acknowledged in *McIntyre v. Ohio Elections Comm'n,* 514 U.S. 334, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995), the value of speech offered anonymously. In *McIntyre,* the Court stated:

Anonymity is a shield from the tyranny of the majority. It thus exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular; to protect unpopular individuals from retaliation—and their ideas from suppression—at the hand of an intolerant society. The right to remain anonymous may be abused when it shields fraudulent conduct. But political speech by its nature will sometimes have unpalatable consequences, and in general, our society accords greater weight to the value of free speech than to the dangers of its misuse.

*Id.* at 357, 115 S.Ct. 1511; *Talley v. California,* 362 U.S. 60, 64, 80 S.Ct. 536, 4 L.Ed.2d 559 (1960) ("Anonymous pamphlets, leaflets, brochures and even books have played an important role in the progress of mankind.") The Utah District Court continued by observing that the Supreme Court also has acknowledged the important role the internet plays in the expression of protected speech:

This dynamic, multifaceted category of communication includes not only traditional print and news services, but also audio, video, and still images, as well as interactive, real-time dialogue. Through the use of chat rooms, any person with a phone line can become a town crier with a voice that resonates farther than it could from any soap-box. Through the use of Web pages, mail exploders, and newsgroups, the same individual can become a pamphleteer.... "[T]he content on the Internet is as diverse as human thought."

*Reno v. American Civil Liberties Union,* 521 U.S. 844, 870, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997) (citation omitted). The *Shurtleff* court noted that several courts have enjoined statutes based on their violation of an individual's right to anonymous free speech on the internet. *American Civil Liberties Union v. Johnson,* 4 F.Supp.2d 1029 (D.N.M.1998), aff'd 194 F.3d 1149 (10th Cir.1999) (state statute that required age verification before access provided to speech on the internet violates First and Fourteenth Amendments); *American Civil Liberties Union of Georgia, et al. v. Miller, et al.,* 977 F.Supp. 1228, 1230 (N.D.Ga.1997) (state statute prohibiting use of false names on the internet "impos[ed] unconstitutional content-based restrictions on ... right to communicate anonymously and pseudo-anonymously over the internet"); *Doe v. 2The-Mart.com, Inc.,* 140 F.Supp.2d 1088, 1092 (W.D.Wash.2001) (individuals allowed to participate in online forums without fear their identity will be exposed). Finding that *Doe* had a constitutional right to anonymous protected speech, the court in *Shurtleff* also rejected Defendant's argument that a sex offender who has completed his prison term and is no longer on parole or probation is not subject to post-sentence curtailing of his anonymous free speech rights. *Shurtleff,* at *6. That is, Doe had not "given up his right to anonymous internet speech because of his status as a sex offender." *Id.*

Finding Doe had a right to protected anonymous speech over the internet, the court next considered whether the Utah Registry Statute impermissibly limited Doe's speech rights. The court initially found that the Utah Registry Statute was content based and thus the "exacting scrutiny" test applied to its review. To apply this standard the court stated:

Under exacting scrutiny, "the government may regulate the contents of Con-

stitutionally protected speech in order to promote a compelling interest if it chooses the least restrictive means to further the articulated interest."

*Shurtleff,* at *8. The *Shurtleff* court noted further: "Utah undoubtedly has a compelling interest in protecting children from predators and investigating online crimes, which are the stated goals of the [Utah Registry] statute." *Id.* The court continued:

> For example, if the UDOC makes sex offender internet information immediately available to investigators, investigations into potential crimes originating online could be hastened.

*Id.*

Having determined that a compelling interest existed to collect identifying internet information, the court turned to the concluding inquiry in its constitutional analysis: whether the Utah Registry Statute's disclosure requirements are the least restrictive means to meet Utah's compelling interest in protecting children. *Id.* In evaluating this final prong, the court noted that "with no restrictions on how the UDOC can use or disseminate registrants' internet information, the [Utah Registry] statute implicates protected speech and criminal activity alike." *Id.* The defendant argued that the court should construe the statute as allowing the use of internet information for criminal investigations only, and not as allowing for dissemination of the identifying information to the public. The court rejected this interpretation, finding that the statute was not readily susceptible to the limitations argued by the defendant. Ruling the limitations advanced by the defendant could not be imposed by the court, the court found the statute violated the First Amendment when applied to Doe and enjoined enforcement of the statute against him.

The action before this Court is based on the *Shurtleff* decision.[8] However, after *Shurtleff* was decided and this action was filed, the Utah legislature amended the Utah Registry Statute, and the amendments became effective on May 12, 2009 ("2009 Utah Amendments"). The Utah legislature also amended its Governmental Records Access and Management Act ("GRAMA"), which governs records privacy in Utah. In light of these amendments, the defendant in *Shurtleff* moved under Rule 60(b) of the Federal Rules of Civil Procedure for the court to vacate its September 25, 2008, order enjoining enforcement of the Utah Registry Statute as it applied to Doe. The defendant claimed that the 2009 Utah Amendments and those made to GRAMA addressed the use of information required to be reported by sex offenders and thus addressed concerns expressed by the court in its September 25, 2008, order. The defendant, in its Rule 60(b) motion, argued that in light of the 2009 Utah Amendments, the registration statute, as amended, could be constitutionally applied to Doe to require him to provide certain internet identifier information. The court agreed and vacated its September 25, 2008, order, dissolving the injunction. The court based its decision on the 2009 Utah Amendments and the changes to GRAMA. The court found:

> The amendments accomplished two things. First, they removed all requirements for disclosure of passwords and explicitly excluded passwords from the definition of "Internet identifier." Second, they limited UDOC's discretion in its use of offenders' internet identifiers. Now UDOC may only use the identifiers

---

**8.** White originally filed this action *pro se* and sought a temporary restraining order. At the hearing on the TRO, Plaintiff stated he had based his lawsuit on *Shurtleff.* In view of the constitutional issues raised, the Court appointed counsel to represent him.

to investigate sex-related crimes or to make disclosures permitted by GRAMA. *Doe v. Shurtleff,* 2009 WL 2601458 (D.Utah August 20, 2009).

In deciding to vacate the September 25, 1998 order, the court noted that under the exacting scrutiny standard, "the government may 'regulate the conduct of constitutionally protected speech in order to promote a compelling interest if it chooses the least restrictive means to further the articulated interest.'" *ACLU v. Johnson,* 194 F.3d 1149, 1156 (10th Cir.1999) (quoting *Sable Commc'ns, Inc. v. Fed. Commc'n Comm'n,* 492 U.S. 115, 126, 109 S.Ct. 2829, 106 L.Ed.2d 93 (1989)). The court noted that the Utah Registry Statute, before the 2009 Utah Amendments, "would have permitted monitoring of any speech, including core political speech," and, therefore, the application violated Doe's First Amendment right to "engage in anonymous core political speech." *Id.* at *4. The 2009 Utah Amendments limited the application of the statute so that "the anonymity of those registered under the [Utah Registry] Statute can only be lifted to investigate an Internet crime." *Id.* at *5. Because it was "no longer the case that the anonymity Mr. Doe relies on as a catalyst for his protected online speech is significantly threatened," the Court vacated its injunction.[9],[10]

### 2. The 2008 Amendment and Plaintiff's Free Speech Claims

■ The First Amendment secures to persons in our country a constitutional right to anonymous free speech. This principle is firmly embedded in First Amendment jurisprudence. In *McIntyre v. Ohio Elections Comm'n,* 514 U.S. 334, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995), the Supreme Court, in finding unconstitutional a state statute prohibiting the distribution of anonymous campaign literature, noted the line of cases that have protected the public debate of issues and candidates, including those opinions that are widely and intensely offensive. The Court noted: "[P]olitical speech by its nature will sometimes have unpalatable consequences, and, in general, our society accords greater weight to the value of free speech than to the dangers of its misuse." *Id.* at 357, 115 S.Ct. 1511. But the Court in *McIntyre* also observed that in offering protection to political speech, "the right to remain anonymous may be abused when it shields fraudulent conduct." *Id.* Where core political speech is burdened the courts "apply 'exacting scrutiny,' and we uphold the restriction only if it is narrowly tailored to serve an overriding state interest." *Id.* at 347, 115 S.Ct. 1511.

■ A careful reading of *McIntyre* discloses that the First Amendment pro-

---

**9.** The Court rejected Doe's argument that disclosure of the required information violated his Fourth Amendment right against unreasonable searches and seizures. The Court noted the information at issue was freely provided by Doe to third-party internet service providers and that he thus did not have a reasonable expectation of privacy in this information. The Court also rejected his *ex post facto* argument because the law was "not so punitive in purpose or effect as to negate the state's intention to deem it civil." *Smith v. Doe,* 538 U.S. 84, 92, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003). The Court found the statute, as amended, "was a nonpunitive and

civil regulatory scheme." *Id.* For the reasons states later in this Opinion, the Court rejects the same arguments raised by White in this motion.

**10.** Doe has appealed the District Court's order vacating its September 28, 2008, preliminary injunction on the ground, among others, that Utah's requirement that sex offenders provide internet identifying information is an unconstitutional infringement of Doe's right to anonymous free speech. Counsel for White have advised the Court that they are representing Doe in his pending appeal before the Tenth Circuit.

tects certain types of anonymous speech, but not others. On the one hand, the First Amendment protects speech, however unpopular, on matters of public interest and debate, and on topics that must be freely discussed in a robust democracy. But *McIntyre* also carefully notes that not all speech—and specifically not all anonymous speech—is constitutionally protected. The *McIntyre* court specifically found that anonymous speech is not protected when the speech constitutes fraud, which a state may punish. *Id.* at 357, 115 S.Ct. 1511. What is unconstitutional is a prohibition on all uses of speech to prevent a misuse of speech. As the Court said in *McIntyre,* Ohio "could not seek to punish fraud indirectly by indiscriminately outlawing a category of speech, based on its content, with no necessary relationship to the danger sought to be prevented." *Id. See Freedman v. Am. Online, Inc.,* 412 F.Supp.2d 174, 184 (D.Conn.2005) (anonymous speech entitled to protection whereas threatening communication is not); *Sony Music Entm't v. Does 1–40,* 326 F.Supp.2d 556, 562–63 (S.D.N.Y.2004) (anonymous free speech does not have absolute protection because the First Amendment, for example, does not protect infringement of intellectual property rights.) When a state seeks to restrict a kind of speech it is entitled to restrict, it must do so carefully, and in reviewing the restriction a court will apply "exacting scrutiny and uphold it if the restriction is narrowly tailored to serve an overriding state interest." *Id.* at 347, 115 S.Ct. 1511.

This framework reveals several tensions at work in this case and raises important constitutional questions about the scope of speech in an internet and electronically-networked society where important topics and issues must be allowed to be freely debated but where states should be permitted to restrict forms of communication, especially anonymous ones, directed at enticing and exploiting children.[11]

The case before the Court is different from the anonymous speech cases courts have addressed in the past. Here, there is no blanket prohibition on speech nor is there a prohibition on a type of speech. In fact, there is no speech restriction at all. Plaintiff can communicate today, in person, over the phone, on the internet in email, and otherwise as he sees fit. What Plaintiff claims here is a "chilling" of his free speech rights. White claims that by requiring him to provide internet identifying information to his county sheriff, and by allowing this identifying information to be used as permitted under O.C.G.A. § 42–1–12(*o* ), White's right to communicate freely is chilled by the possibility that his communications and transmissions may be accessed and monitored by law enforcement, or that his identifying and personal information may be disclosed to the public, who may in turn access and monitor his internet communications. The possibility of this access and monitoring of his communications, White claims, chills his right to speak freely.

*Speech restraint or chilling effect*

Plaintiff summarily alleges that the 2008 Amendment is a prior speech restraint. (Pl.'s Br. 13.) He claims the requirement to report Internet Identifiers serves as a free speech gateway restriction. To make this argument, he relies on our circuit's decision in *Bourgeois v. Peters,* 387 F.3d

---

**11.** The Court notes that use of the internet by predators seeking to engage in sexual relations with children or to engage in conduct that victimizes children sexually is pernicious. In the past five years alone, this Court has presided over seven cases where a defendant was convicted of illegal use of the internet to induce a child into sexual relations, to transmit obscene images to a person the defendant believed was a child, or to participate in the transmission of child pornography.

1303 (11th Cir.2004). The plaintiffs in *Bourgeois* sought to protest at the School of the Americas, a training program for foreign-national military members run by the United States Army at Fort Benning, Georgia. The City of Columbus, based on an expressed and professed need to prohibit terrorism, required protestors, as a condition to being allowed to proceed to a designated protest area, to submit to a magnetometer search at a check point several blocks from the area designated for the protest. The Eleventh Circuit held that requiring protestors to submit to the magnetometer was a search that violated the Fourth Amendment because it was an unreasonable invasion of privacy, in the absence of an exception to the requirement of a warrant for the search. The Court also found the magnetometer searches constituted a prior restraint on the protestors' speech. The Court found: "Because individuals must, in effect, receive the permission of police officers to enter the area of the protest and to exercise their right to freedom, speech and assembly, the search policy establishes a prior restraint on protected expression." *Id.* at 1319.

The Supreme Court's opinion in *Watchtower Bible v. Village of Stratton*, 536 U.S. 150, 122 S.Ct. 2080, 153 L.Ed.2d 205 (2002), illustrates the kind of restraint which gives rise to constitutional anonymous free speech concerns. In *Watchtower Bible*, the Village of Stratton ("Stratton") passed an ordinance prohibiting "canvassers" and others from "going in and upon" private residential property for the purpose of promoting any "cause" without first having obtained a permit from Stratton to do so. *Id.* at 154, 122 S.Ct. 2080. The stated purpose of the ordinance was to prevent fraud and other crime and to protect residents' privacy. *Id.* at 164–165, 122 S.Ct. 2080. Plaintiff, a Jehovah's Witness organization which engages in door-to-door canvassing to promote the Jehovah's Witness faith, sued to enjoin enforcement of the ordinance.

The Court, in considering Plaintiff's claims, recognized the importance of door-to-door canvassing to the faith obligation of Jehovah's Witnesses and that "[f]or over 50 years, the Court has invalidated restrictions on door-to-door canvassing and pamphleteering." *Id.* at 155, 122 S.Ct. 2080. The Court found that the Stratton solicitation permit ordinance was an unconstitutional infringement on speech because it was a restriction on Plaintiffs' right to engage in free speech about their religion. The Court found the requirement that a canvasser file a public registration application which was available for public inspection in the Mayor's office undercut a person's right to support causes anonymously. *Id.* at 166, 122 S.Ct. 2080. The Court noted that Stratton had a legitimate interest in protecting against crime and, to advance that interest, it conceivably could regulate solicitor canvassing.

The problem with the Stratton canvassing ordinance was that it required a permit even for those who simply sought to advocate a cause. This "too broad sweep" constituted an encumbrance on protected anonymous speech, causing the ordinance to be unconstitutional. That a permit was required as a condition to exercise one's right to speak was, according to the Court, a pernicious effect of the ordinance. *Id.* at 167, 122 S.Ct. 2080. Finally, the Court found that the ordinance encumbered speech, especially spontaneous speech, because someone who had an urge on a weekend to express her protected views could not access the permit office, which was open only on weekdays. Holding the permit requirement was too broad, encompassing all forms of canvassing and untailored to address Stratton's legitimate interests, the ordinance was struck down as unconstitutional.

*Bourgeois* and *Watchtower* do not apply here. The 2008 Amendment does not set up a gateway to access a communication means. White is free to use the internet, including to interact with people or generally to communicate his views on it. That is, his communication is unrestricted. There is no public office where his identifying information is available to the public. White has no privacy interest in his Internet Identifiers because, to varying degrees, he discloses his identifiers to third parties, such as internet service providers, those offering websites, interactive communication services, and restricted internet areas, and uses his internet identifying information publicly on the internet. These disclosures often, if not always, allow persons to whom he discloses his internet identifying information to identify the user name Plaintiff uses in communications he considers anonymous.[12]

■■■■ The one argument White makes that merits consideration is his claim that, by having to disclose his Internet Identifiers, his right to anonymous communication is chilled because he fears his identity may be made known with respect to protected speech he seeks to offer anonymously.[13] In essence, he claims that he would be less likely to express his views (which may well be controversial and perhaps even offensive) if he is required to disclose his internet identifying information to the sheriff in his county because he prefers to communicate on these issues anonymously. The Court considers this "chilling" issue.

The analytical process for evaluating whether a state statute impermissibly infringes on an individual's right to engage in anonymous protected speech is fairly well-developed. The Court must first consider if the speech at issue is protected. *McIntyre*, 514 U.S. at 357, 115 S.Ct. 1511. It must then evaluate whether the state regulations or the statute at issue infringes on an individual's protected speech rights, including the right to engage in anonymous protected speech. If it does, the Court must then decide if the regulation at issue was a content-based or content-neutral restriction, which depends on whether the restriction was enacted to regulate speech content.

■■■■ A prior restraint on expression is a content-based restriction of speech. A prior restraint exists when the enjoyment of protected expression is contingent upon the approval of government officials. *Near v. Minnesota*, 283 U.S. 697, 711–13, 51 S.Ct. 625, 75 L.Ed. 1357 (1931); *United States v. Frandsen*, 212 F.3d 1231, 1236–37 (11th Cir.2000) ("A prior restraint of expression exists when the government can deny access to a forum before the expression occurs."). Prior restraints of expression are presumptively unconstitutional and face strict scrutiny, and the government must use the least restrictive means of advancing a compelling state interests. *Frandsen*, 212 F.3d at 1237; *Church of Scientology Flag Serv. v. City of Clearwater*, 2 F.3d 1514, 1547–48 (11th Cir. 1993). *See also United States v. Playboy Entm't Group*, 529 U.S. 803, 813, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000) (regulation to protect children requiring scrambling or blocking of cable channels dedicated to

---

**12.** Plaintiff claims he seeks to present his views on certain unidentified policy and legislative issues anonymously. He does not argue that communications to entice children into sexual encounters or to exchange obscene images with them are protected expression.

**13.** The Court acknowledges usernames can be traced by service providers, website hosts, and others to the actual user of the internet service or location. That a person generally provides information that allows one or more people to discover who is using an internet pseudonym is not a basis for the Court's opinion in this case.

sexually-oriented programs was content-based restriction). If the statute is determined to be content-neutral—not motivated to regulate speech content—the government must show it had a "significant" government interest and that the statute was narrowly tailored to address the interest stated. Content-neutral restrictions are those that "place no restriction on—and clearly do not prohibit—either a particular viewpoint or any subject matter that may be discussed." *Hill v. Colorado,* 530 U.S. 703, 723, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000). Content-neutral restrictions are "those that have nothing to do with the content of speech but rather are imposed because of the nature of the regulated conduct." *Burk v. Augusta-Richmond County,* 365 F.3d 1247, 1253 (11th Cir.2004).

 A content-neutral conduct regulation applies equally to all, and not just those with a particular method or subject matter in mind. *Id.* at 1254. "A content neutral time, place and manner regulation must leave open alternative channels of communication and survive 'intermediate scrutiny,'[14] the requirement that it not restrict substantially more speech than is necessary to further a legitimate government interest." *Id.* at 1251 (quoting *Connection Distributing Co. v. Holder,* 557 F.3d 321, 328–29 (6th Cir.2009)).

Plaintiff argues that the 2008 Amendment is "a content-based restriction" requiring a strict scrutiny review. He submits that "Georgia Courts have agreed ... that a 'statute's prohibition of internet discussions which 'falsely identify' the sender constitutes presumptively invalid content-based restriction." (Pl.'s Br. 10–11.) Plaintiff relies on *ACLU v. Miller,* 977 F.Supp. 1228, 1232 (N.D.Ga.1997) to support his content-based restriction argument. Reliance on *Miller* is misplaced.

*Miller* involved a state statute that made it a crime for someone to transmit data on the internet using a name falsely to identify the transmitting person or using a trade name, trademark, logo, seal or symbol implying the transmitting person was authorized to use such identifier. Thus, the statute prohibited use of the internet to communicate using a fictitious name or identity, and the Court found this access prohibition was a content-based restriction. The Court, assuming there was a compelling state interest at stake, found "the statute was not drafted with the precision necessary for laws regulating speech." *Id.* at 1233. That is, the Court found the blanket prohibition against fictitious names and identifiers was too broad and impermissibly restrained speech.

Here, the 2008 Amendment does not prohibit the use of fictitious identifiers or pseudonyms, and *Miller* does not apply. There is no prohibition on White's speech—anonymous or otherwise. The 2008 Amendment does not restrict or encumber what White may say or how he might say it.[15]

Because the 2008 Amendment is not a restriction on speech, anonymous or otherwise, and is not a gateway restriction to speech, the Court concludes that the 2008 Amendment is a content-neutral require-

---

14. There are three levels of scrutiny in constitutional cases. The final and most lenient level is "rational basis" review where the government is required only to show the regulation is rationally related to a legitimate state interest served by the regulation. The rational basis test does not apply in this case.

15. The 2008 Amendment arguably seeks, ultimately, to allow law enforcement to investigate communications intended to entice minors to engage in sexual relations, which constitutes criminal activity under state and federal law and which would constitute a compelling state interest even if the 2008 Amendment was considered to limit these criminal communications.

ment and concludes the intermediate scrutiny test in *Burke* applies. However, both parties in this case assume strict scrutiny is the standard to be used and the Court applies this higher standard because, *inter alia*, application of the lower, intermediate standard would not affect the Court's findings and conclusions. Plaintiff does not contest that Defendants have a compelling interest in protecting children from internet predators. His claim is that the regulation in the 2008 Amendment is not sufficiently narrow to meet the least restrictive means test.[16]

Plaintiff's argument is based on the overall effect of the 2008 Amendment. White claims that the Internet Identifiers he is required to report are permitted, under circumstances stated in O.C.G.A. § 42–1–12(*o*), to be disclosed to law enforcement and government agencies which, in turn, could result in government officials, and maybe even members of the public, being able to identify online communications and expressions in which White engages using his fictitious names or pseudonyms. This prospect, he claims, chills his right to speak anonymously. That is, the possibility that his anonymous communications might be identified as his, chills his right to speak anonymously on the internet.

Plaintiff also argues that to the extent the government may have a legitimate interest to "protect children from harmful materials" and communications (Pl.'s Br. 11), the requirement that he report all his internet identifying information to his sheriff is not the least restrictive means of furthering that interest. *Id.* 11–12. Finally, White argues that the permitted use provisions of O.C.G.A. § 42–1–12(*o*) are unconstitutionally vague and ambiguous,

and for this reason they should not be allowed to be enforced.

Defendants claim the uses of Internet Identifiers allowed under O.C.G.A. § 42–1–12(*o*) are narrow, will not impact White's right to anonymous free speech, and that his internet identifier information will not be used by law enforcement absent a warrant.

The Court considers these arguments in turn, noting they hinge on the uses permitted under O.C.G.A. § 42–1–12(*o*) and the scope of the Internet Identifiers required to be reported.

The parties do not dispute that the state has a compelling interest in protecting children from harmful communications. It is well-recognized in our culture that children are at risk from sexual predators who seek, using the internet, to lure them into illegal sexual conduct. The creation and sharing of pornographic images of children is a further and wide-spread abuse of innocents in our country and abroad. The parties in this case rightfully acknowledge the state has an interest in protecting against internet abuse of children. The issue in this case is whether the State of Georgia sought to address this interest in a permissible way by enacting O.C.G.A. § 42–1–12. Whether it did centers on the scope of two sets of provisions of the statute.

The first set of provisions are O.C.G.A. §§ 42–1–12(a)(16), (21.1), and (21.2). These provisions define the internet identifying information an offender is required to report. The offender is obligated to provide email addresses, usernames and user passwords. O.C.G.A. § 42–1–12(a)(16)(K). "Username" is de-

---

**16.** Plaintiff might argue that the 2008 Amendment ultimately targets the content of his anonymous speech. If it does, and the Court does not so conclude, it seeks to identify content that evidences the illegal act of enticing children into illegal sexual encounters. This, of course, is not protected speech.

fined as a "string of characters chosen to uniquely identify an individual who uses a computer or other device with Internet compatibility to communicate with other individuals ... [via] e-mail or instant messages or by participating in interactive online forums." O.C.G.A. § 42–1–12(a)(21.1). "User password" is defined as "a string of characters that enables an individual who uses a computer or other device with Internet Capability to gain access to e-mail messages and interactive online forums." *Id.* at subsection (21.2). The mere reporting of this information alone is not speech. It does not constitute content and these items are simply the vehicles by which communication can occur on the internet. That the definitions are broad and encompass many possible uses also is not alone a constitutional issue. The mere delivery of this information to the sheriff does not inhibit speech, is not a free speech gateway requirement, and does not implicate the First Amendment. The First Amendment is, however, implicated when this disclosure requirement is coupled with O.C.G.A. § 42–1–12(*o* ), which provides:

(*o* ) The information collected pursuant to this Code section shall be treated as private data except that:

(1) Such information may be disclosed to law enforcement agencies for law enforcement purposes;

(2) Such information may be disclosed to government agencies conducting confidential background checks; and

(3) The Georgia Bureau of Investigation or any sheriff maintaining records required under this Code section shall, in addition to the requirements of this Code section to inform the public of the presence of sexual offenders in each community, release such other relevant information collected under this Code section that is necessary to protect the public concerning sexual offenders re-quired to register under this Code section, except that the identity of a victim of an offense that requires registration under this Code section shall not be released.

O.C.G.A. § 42–1–12(*o* ).[17] While the section provides that the information collected under the section is "private data," the permitted uses of the email, username and password information implicates Plaintiff's anonymous free speech rights. That is, because of the possibility of disclosure and broad use of Plaintiff's internet identifying information, Plaintiff legitimately asserts the regulation chills his protected free speech rights.

Prior to the 2008 Amendment, the Registration Act had, for a number of years, required sex offenders to disclose a variety of personal information which was permitted by the Registration Act, including under § 42–1–12(*o* ), to be used by law enforcement and disclosed to the public. The Court has to consider the 2008 Amendment in this context and in the context of the well-established body of law that protects anonymous speech.

A regulatory scheme designed to further the state's legitimate interest in protecting children from communication enticing them into illegal sexual activity should consider how and where on the internet such communication occurs. The 2008 Amendment, with the use provisions of § 42–1–12(*o* ), goes beyond addressing the state's interest in protecting children from this communication threat. First, the scope of the Internet Identifiers required to be reported is broader than necessary to address the state's interest. The Court acknowledges that the regulation is limited to those people who have been convicted of sex offenses, and that limitation alone substantially and reasonably limits the reach of the regulation. Even with this limita-

17. O.C.G.A. § 42–1–12(*o* ) was enacted in 1981.

tion, however, the scope of the internet identifying information required to be reported is too broad and too uncertain.

A registrant must report usernames and passwords used on "interactive online forums." This term is not defined and arguably includes forums in which protected speech occurs. For example, the parties agree that this phrase includes "blogs." A "blog" is defined as "a Web site that contains an online personal journal with reflections, comments, and often hyperlinks provided by the writer; *also:* the contents of such a site." *Merriam–Webster Online Dictionary,* retrieved February 25, 2010, from http://www.merriam-webster.com/dictionary/blog. This internet communication form does not reasonably present a vehicle by which a sex offender can entice a child to have illicit sex. For the regulation to be valid, what a registrant can be required to report must be related to the internet communication means used by predators to communicate with children. In the Court's experience, these communications are those that occur privately in direct email transmissions, usually using a pseudonym, and in instant messages. They generally do not occur in communications that are posted publicly on sites dedicated to discussion of public, political, and social issues.

The Court also notes that the 2008 Amendment requires a registrant to report even usernames that contain his or her real name as well as usernames and passwords that he or she might use exclusively to conduct personal commercial transactions with retail companies and banking institutions. In short, the scope of the internet identifying information required to be reported is not limited to identifiers used in the type of internet communications that enable sexual predators to entice children.

Second, the uses permitted under O.C.G.A. § 42–1–12(*o*) are too broad. Sections 42–1–12(*o*)(1) and(3) are especially troubling when evaluating whether the regulation here is sufficiently limited to address the state's interest in protecting children. Subsection (*o*) allows the Internet Identifiers to be disclosed to law enforcement agencies for "law enforcement purposes." This permitted use is undefined and extensive.[18] "Law enforcement purposes" can have many meanings. To some, it is the investigation of suspected or identified criminal conduct. To others, "law enforcement purposes" encompasses the development of investigative leads. To still others, it is the prevention of crime. It may mean any purpose determined appropriate by law enforcement personnel to prevent criminal conduct. The free speech implication is obvious. A law enforcement agency could deem it necessary to begin monitoring internet sites, blogs, or chat rooms it believes may or could be used by predators to induce minors into sexual encounters because the monitoring may provide investigative leads. An agency could decide to create a list of registrant user names for use in monitoring targeted internet sites, blogs, or chat rooms to review what registrants are saying in their communications on those internet locations. Using Plaintiff's Internet Identifiers in this way would disclose protected speech he chose to engage in anonymously and thus would chill his right to engage in

---

**18.** White takes the incredible position that any regulation violates his First Amendment rights. He argues that the state can meet its interest in protecting children against internet predators by enacting programs to promote use of filtering software to "give parents the ability [to monitor their children's access] without subjecting free speech to severe penalties." The Court rejects Plaintiff's "we must require families to protect themselves from child predators" limitation. What Plaintiff proposes is unrealistic and ignores that a state legitimately make take action to protect its child citizens.

protected anonymous free speech. This section, like the original statute at issue in *Shurtleff,* is not sufficiently narrowly-tailored to meet the government's compelling interest to protect children.

Subsection (*o*)(3) is most troubling. It allows the Internet Identifiers to be released to the community by law enforcement "to protect the public." It is conceivable, if not predictable, that a person in law enforcement might determine that Internet Identifiers for offenders ought to be released so that the public can search for and monitor communications which an offender intends to be anonymous. That these anonymous communications might well be on a matter of public policy, political speech, or other protected speech squarely implicates the First Amendment. While this monitoring could lead to the discovery of communications intended to harm children and thus would be a substantial benefit in identifying those making them, this section simply is too broad. It is by definition a violation of the requirement that the state employ the least restrictive means to address its interests. The prospect that Internet Identifiers, as currently defined, may be released to the community has an obvious chilling effect.

The interest the state has here is to regulate the means by which sex offenders may communicate with children and by which children may respond to offenders' sexual advances. It is this type of internet communication, usually, but not exclusively, interactive, and often real time, in which the state regulation has a significant interest in regulating to protect children. The Internet Identifiers required to be disclosed must be related to the compelling interest sought to be achieved. The scope of the Internet Identifiers which are required to be disclosed and how this information may be used is not sufficiently narrow.

In summary, the Court, evaluating the 2008 Amendment under the strict scrutiny standard,[19] finds the state has a compelling state in protecting children from internet communication to entice or induce them into illegal sexual encounters. This being a compelling interest to protect, the Defendants may enact regulation to address this interest. However, the regulation permitted must address the identifiers that are used in the kind of interactive communications that entice children into illegal sexual conduct and it must focus on those sites and facilities where these kinds of interactive communications occur. The 2008 Amendment, as written, is not the least restrictive means or an appropriately restricted means to address the state's interest.[20]

The Court further concludes that the disclosure provisions of O.C.G.A. § 42–1–12(*o*) subsections (1) and (2) are not the least or appropriately restrictive means to accomplish the state's interest in protecting children. Specifically the terms "law enforcement purposes," in subsection (1) and "necessary to protect the public" are not sufficiently tailored to meet the state's significant interest to protect children. They also, when read in conjunction with the provisions of O.C.G.A. § 42–1–12(a)(16)(K) and (f), are not sufficiently narrowly-tailored.

---

**19.** The Court would reach the same conclusion using the intermediate scrutiny standard. The regulation here is not sufficiently narrowly-tailored to meet the state's substantial interest in protecting children.

**20.** The Court does not opine on the identifiers that may be required to be reported. The scope of the information properly required to be reported may depend on the limitations placed on the access to and uses of the information. These matters are best left to the legislature.

Finally, even if the scope of the internet identifying information is narrowed to a permissible scope, the phrases referenced in § 42–1–12(*o* ) which are discussed in this Opinion and Order and the term "interactive online communication" in the 2008 Amendment are sufficiently ambiguous to raise a question whether the regulation is too vague.[21] In short, the Court finds the 2008 Amendment in the context of § 42–1–12 as a whole, including § 42–1–12(*o* ), has a chilling effect on White's right to anonymous free speech, and thus he is likely to prevail in this case.

### 3. *The 2008 Amendment and the right to private association*

■ Plaintiff relies on *NAACP v. Alabama, ex rel. Patterson*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), *Bates v. City of Little Rock*, 361 U.S. 516, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960), and *Gibson v. Florida Legislative Investigation Committee*, 372 U.S. 539, 83 S.Ct. 889, 9 L.Ed.2d 929 (1963), to support his claim that the 2008 Amendment violates his right to association. Reliance on these cases is misplaced. These cases all concerned whether requiring an organization to disclose its membership lists violated the organizations' members' right to associate, including anonymously. Here, the 2008 Amendment does not require White to disclose his membership in an organization and his association rights are not implicated by the 2008 Amendment's requirement of identifier disclosure.

### 4. *The 2008 Amendment and the Fourth Amendment*

■ The 2008 Amendment does not require Plaintiff to disclose information in which he has a Fourth Amendment expectation of privacy. To the contrary, the information required to be disclosed is information which he has reported to various third parties and is information he uses publicly on the internet. There is no Fourth Amendment impact at issue here. *See United States v. Miller*, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976); *United States v. Perrine*, 518 F.3d 1196 (10th Cir.2008); *United States v. Robinson*, 225 F.3d 656 (4th Cir.2000) (unpublished).[22]

### E. *Preliminary Injunction*

■ For the reasons stated above, the Court determines that the 2008 Amendment, as written, is not sufficiently narrow to accomplish Georgia's legitimate interest in protecting children and that the permitted uses of internet identifying information is sufficiently ambiguous to be unconstitutionally vague, including by use of the term "law enforcement purposes." Thus, the Court finds that Plaintiff has a substantial likelihood of prevailing on the merits. The Court considers, however, whether under the circumstances here Plaintiff will suffer irreparable injury if preliminary injunction is not issued.

■ Constitutional harm is not necessarily synonymous with the irreparable harm necessary for issuance of a preliminary injunction. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 112–13, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). It is well-established, though, that [t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). Plaintiffs that show a chilling effect on free expression have demonstrat-

---

**21.** The Court does not opine at this stage whether the use provisions of the statute would be impermissibly vague if the internet identifying information were narrowed.

**22.** The 2008 Amendment is part of a civil regulatory scheme and does not violate the *ex post facto* clause. *See Smith v. Doe*, 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003).

ed an irreparable injury. *See Northeastern Florida Chapter of Ass'n of General Contractors of America v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir.1990) (citing *Cate v. Oldham*, 707 F.2d 1176, 1189 (11th Cir.1983)); *Hohe v. Casey*, 868 F.2d 69, 72–73 (3d Cir.1989).

The Court concludes that enforcement, or its threat, of O.C.G.A. § 42-1-12(a)(16)(K) irreparably harms White by chilling his First Amendment right to engage in anonymous free speech. The Court finds further that the injury White would suffer outweighs the harm to the state of withholding this statute as enacted. Finally, because a constitutional right is at issue, the entry of an injunction would not be adverse to the public interest but would in fact advance it.

## III. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for a Preliminary Injunction [28] is **GRANTED** and the enforcement of O.C.G.A. § 42-1-12(a)(16)(K) against Plaintiff Terrence J. White is **ENJOINED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File Supplemental Response [46] is **GRANTED**.